IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

DARRELL BRADDOCK v. STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Shelby County
No. P-22352     Bernie Weinman, Judge

No. W2004-02162-CCA-R3-PC  - Filed December 14, 2005

The petitioner, Darrell Braddock, appeals the denial of his petition for post-conviction relief, arguing the post-conviction court erred in finding he received effective assistance of counsel. Following our review, we affirm the post-conviction court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Darrell Braddock, West Tennessee State Prison, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and John W. Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

FACTS

Because the record on appeal is sparse, we have gleaned the facts from the opinion of this court on direct appeal:

On September 12, 1996, a Shelby County jury found [the petitioner], guilty of first degree felony murder, criminal attempt: to wit especially aggravated robbery, criminal attempt: to wit murder in the first degree, and two counts of aggravated assault. . . .

On January 12, 1994, at approximately 7:12 am, three armed masked men entered Dan's Big Star Grocery Store at 3237 Winchester, Memphis, Tennessee. At the time the men entered, Robby Allen, Jr., Felicia Bailey, Janice Cox, Angela

Adams, Malcolm Clark, and Johnny Russell, along with other employees of the store, were inside the store. When Robby Allen, who was working in the store's office, saw a black male run across the store with a gun drawn, he reached for his own gun. Before Mr. Allen could draw his gun, Michael Irvin jumped over the partition between the office and the rest of the store and landed on Mr. Allen's shoulder. Irvin was armed. Mr. Allen and Mr. Irvin struggled for control of Mr. Irvin's weapon, in the process the weapon fired into the air.

While Mr. Allen and Mr. Irvin struggled, [the petitioner] had run to cash register number two where Felicia Bailey, a store employee, was standing. [The petitioner] pointed his gun at Ms. Bailey and ordered her to get down on the floor. Ms. Bailey complied. [The petitioner] then turned and pointed the gun at Malcolm Clark, who also got down on the floor. Mr. Clark identified exhibit 15, a .380 caliber automatic pistol taken from [the petitioner's] aunt's home, as a weapon resembling the gun which [the petitioner] pointed in his face.

During the commotion, several shots were fired. One shot came from the store floor. Another came from the gun over which Mr. Allen and Mr. Irvin[] wrestled. In the struggle over the gun, Mr. Irvin fell and Mr. Allen fell on top of him. Mr. Allen reached for a pair of handcuffs that were in the office. As he was doing so, a gun was extended over the wall into the office and fired into the back of Mr. Allen's neck, causing him to lose consciousness.

Once the commotion ceased, Ms. Cox jumped over the back wall of the office and ran to a phone located in the rear of the store and called 911. Ms. Adams also called 911 and pulled the store's alarm.

Mr. Clark crawled along the floor toward the office. He saw Johnny Russell lying on the floor with a large amount of blood on the floor around him. Mr. Clark retrieved Mr. Russell's .357 Smith and Wesson pistol from the floor in front of Mr. Russell's body. Mr. Clark then climbed over the wall into the office and handcuffed Mr. Irvin and also confiscated Mr. Irvin's weapon, a .25 caliber automatic pistol. Mr. Clark picked up Mr. Allen's .380 caliber Browning pistol. Mr. Allen recovered consciousness and gave the store keys to Mr. Clark, who locked the doors to the store.

Mr. Russell died as a result of a gunshot wound to his back. No bullet or bullet fragments were found in his body. Mr. Allen was hospitalized for ten days, recovering from the wound to his neck. A bullet was removed from his body. Mr. Irvin died as a result of gunshot wounds from a .38 or a .357 caliber revolver.

[The petitioner] made a statement to Sergeant Timothy Cook, of the Memphis Police Department, which was introduced at trial. In the statement, [the petitioner]

2

confessed to being involved in the attempted robbery of Dan's Big Star Grocery. [The petitioner] said he used a black .380 pistol (introduced at trial as exhibit 15) which belonged to his aunt. [The petitioner] also stated that Carlos Rice was the third perpetrator in the robbery, and that he used a long-barreled revolver. [The petitioner] stated that he took the revolver from Mr. Rice and threw it into a field. A Colt .38 revolver was located by the police in the field indicated by [the petitioner] and was introduced at trial as exhibit 23. [The petitioner] further stated that Mr. Rice told him that Mr. Rice had shot the store manager in the back (referring to Mr. Russell) because otherwise the manager would have shot him.

At trial Mr. Rice testified that he had plead[ed] guilty to murder in the perpetration of a robbery and related charges arising out of the attempted robbery of Dan's Big Star. He acknowledged that he is currently serving a life sentence for those crimes, but stated that he is attempting to obtain post-conviction relief from his plea. Mr. Rice testified that he did not have a gun during the attempted robbery, and denied that he shot Mr. Russell. He said that he recognized the .380 automatic (exhibit 15) as [the petitioner's] aunt's gun, but said that [the petitioner] used the .38 revolver (exhibit 23) during the robbery. He further testified that Michael Irvin planned the robbery. He stated that the plan consisted of Mr. Irvin taking care of the people in the office, he was to be positioned at register one and [the petitioner] was to take register two. Mr. Rice testified that he did not shoot Mr. Allen and did not see [the petitioner] shoot him either.

The State also presented evidence at trial that [the petitioner's] palm print was on the car used to convey the perpetrators to and from Dan's Big Star. A Mr. Steve Scott of the Tennessee Bureau of Investigation testified that he tested the Colt. 38, the .25 caliber, the Browning .380 automatic, and the Smith and Wesson .357 Magnum, and of those guns, the bullet which was taken from Mr. Allen's body could only have come from the .38 revolver. He was unable to state conclusively that the bullet did come from that gun, but ruled out the possibility that it came from one of the other guns found at the scene.

State v. Darrell Braddock, No. 02C01-9707-CR-00279, 1998 WL 217897, at **1-2. (Tenn. Crim. App. May 5, 1998) perm. to appeal denied (Tenn. Dec. 28, 1998).

This court affirmed the petitioner's convictions and sentences. See id. at **3-4. Permission to appeal was denied by the Tennessee Supreme Court on December 28, 1998. It appears that the petitioner then filed petitions for post-conviction relief on both December 28 and December 29, 1999. As explained by this court in Darrell Braddock v. State, No. W2004-00979-CCA-R3-PC, 2004 WL 2439256 (Tenn. Crim. App. Oct. 28, 2004), perm. to appeal denied (Tenn. Feb. 28, 2005), reviewing the dismissal of what apparently was his third petition for post-conviction relief, the petitioner, *pro se*, filed on March 16, 2004, a petition for post-conviction relief, claiming ineffective assistance of counsel. The post-conviction court dismissed the petition, finding it was the

3

petitioner's second petition and it was time barred by the statute of limitations. This court, pursuant to the State's Rule 20, Rules of the Court of Criminal Appeals, motion, affirmed the dismissal. See id. at **1-2. According to the opinion, the petitioner had not appealed the dismissal of his December 29, 1999, petition.

Now the petitioner is before us on appeal of the denial of what appears to be the first post-conviction petition that he filed. According to the technical record, the petitioner, *pro se*, filed the original petition, which is the basis for this appeal, with the Shelby County Criminal Court Clerk's office on December 28, 1999. Over the next three and a half years, four amended petitions were subsequently filed, by and through post-conviction counsel.[1] There is no explanation in the record for the lengthy delay between the filing of the original petition and the evidentiary hearing. In fact, because we do not have a copy of the evidentiary hearing transcript, we cannot determine when the hearing was actually held. The record on appeal contains the post-conviction court's August 19, 2004, order denying the petitioner relief and discussing the evidentiary hearing.[2] It is from this order that the petitioner appeals *pro se*, asserting, among numerous other claims, that he received ineffective assistance of counsel.

## ANALYSIS

### I. Post-Conviction Statute of Limitations and Successive Petitions

We initially address the State's arguments that we should dismiss the post-conviction petition as being time barred by the statute of limitations and because it is a subsequent post-conviction petition. Under the Post-Conviction Procedure Act of 1995, a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a) (2003). The State correctly notes that this court found the petitioner previously failed to file one of his earlier post-conviction petitions within the one-year statute of limitations mandated by the Post-Conviction Act. Braddock, 2004 WL 2439256, at *1. The petition in that case was dated March 16, 2004, several years past the December 28, 1998, date in which the petitioner's appeal was denied by our supreme court. The petition which is the basis of this appeal bears a stamped file date of December 28, 1999, within the statutory time requirement. As such, we do not conclude that this claim is barred by the statute of limitations.

Additionally, the State argues that the current petition should be dismissed because it is a subsequent petition, correctly noting that the Act

---

[1] The first amended petition was filed on April 27, 2000. Although the stamped file dates for the second and third amended petitions are illegible, the certificates of service are dated October 24, 2002, and January 22, 2003, respectively. Finally, a fourth amended petition was filed on July 2, 2003.

[2] Because the order denying the petition is dated in August 2004, we surmise the evidentiary hearing took place sometime in 2004.

contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed.

Tenn. Code Ann. § 40-30-102(c) (2003). As the statute provides, a subsequent petition should be summarily dismissed if the original petition was resolved on the merits. However, since it does not appear that the petitioner's second and third petitions were considered on their merits, we will do so to this petition, although it appears to be his first.

## II. Standard of Review

The petitioner argues the post-conviction court erred in finding that he received the effective assistance of counsel. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## II. Ineffective Assistance of Counsel

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

5

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of facts and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

In this case, although there was an evidentiary hearing on the post-conviction petition and the record on appeal contains a copy of the post-conviction court's order of dismissal, the transcript is not included in the record. Our supreme court has explained the responsibility of the appealing party to provide a sufficient record on appeal:

> When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue. State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue. See T.R.A.P. 24(b).

State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). This court has previously explained that "[i]n the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226 (Tenn. Crim. App. 1979)).

The post-conviction court's findings of fact and conclusions of law are as follows:

> The petitioner filed a Petition for Post-Conviction Relief alleging that he was not properly represented by his attorney at trial.
>
> At trial the [petitioner] was convicted of First Degree Felony Murder, Criminal Attempt, to-wit: Especially Aggravated Robbery, Criminal Attempt, to wit: Murder in the First Degree, and two counts of Aggravated Assault.
>
> At the evidentiary hearing on this petition the [c]ourt heard testimony from . . . the petitioner, and [trial counsel] who represented the petitioner at trial.
>
> The petitioner testified to eight issue[s] that he felt made his trial attorney ineffective.
>
> 1. His attorney failed to establish a defense of felony murder.
>
> 2. The [petitioner] maintained that he fled when he heard the first shots and the jury should have been instructed on renunciation.
>
> 3. His attorney never interviewed the witnesses.

7

4. He stated that his attorney instructed him to write a letter to the judge and prosecutor and told him what to write in the letter and that the letter was used in the hearing on the Motion to Suppress. He felt the letters helped prove his confession was valid.

5. His attorney did not make an opening statement.

6. His attorney did not challenge the sufficiency of the charge of felony murder on appeal.

7. His attorney did request some lesser included offenses but not all lesser included offenses.

8. The petitioner wanted several parts of the jury instructions challenged on appeal and these instructions were not challenged.

[Trial counsel's] testimony was to effect that he had been practicing law since 1961 and he had handled many murder trials. After his appointment to [the petitioner's] case he had visited his client on many occasions. He tried to work out a negotiated settlement of the case. He received an acceptable offer but the family of the victim turned it down. He stated that he had talked to the defendant's family and intended to have them testify in mitigation. He stated that he gave his client everything he received in discovery. He interviewed all the witnesses and received the witnesses' statements from the State early in his investigation of the case. [Trial counsel] stated that he never told his client to send letters to anyone. An order was entered amending the indictment in open [c]ourt. He did not discuss the instructions with his client prior to the judge charging the jury. He stated that he felt that he thoroughly investigated the case.

It would appear from the record in this case that there was overwhelming evidence of the [petitioner's] guilt. The [petitioner] gave a statement that implicated him as a participant in these crimes. The [petitioner] takes the position that he ran away when he heard shots and therefore the affirmative defense of renunciation should have been developed by his attorney. In order to have a defense of renunciation the [petitioner] would after having committed a criminal attempt, solicitation or conspiracy, would have had to prevent the successful commission of the offense and the offense was prevented under circumstances manifesting a complete and voluntary renunciation of the [petitioner's] criminal purpose. The testimony in this case taken in the best light of the [petitioner's] position would not have constituted the circumstances that would have created the affirmative defense of renunciation. The [c]ourt finds that the trial attorney was not ineffective in not pursuing the defense or requested the court to instruct the jury on renunciation.

8

The [c]ourt finds that [trial counsel] interviewed the witnesses and read the witnesses' statements in preparation for trial and that he did not advise his client to write letters to the [j]udge or prosecutor.

The decision whether or not to make an opening statement is strictly a matter of trial strategy and waiving an opening statement is not necessarily ineffective. In Hellard v. State, 629 S.W.2d 4, our Supreme Court stated,

"Although in Baxter we adopted a higher standard of competence for the legal representation required in criminal cases, we did not require perfect representation. Moreover the defense attorney's representation, when questioned is not to be measured by '20/20 hindsight[']."

"Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel strategy will vary even among the most skilled lawyers. When that judgment exercise turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel."

This [c]ourt does not find that the waiver of opening statement was ineffective representation.

The issue of the sufficiency of the evidence to the charge of Murder was considered by the appellate court.

As to the [petitioner's] allegation that his attorney did not request all possible lesser included offenses, it is the [c]ourt's duty to determine what are the lesser included offenses and to properly instruct the jury. The failure of the [c]ourt to instruct the appropriate lesser included offenses is plain error and would be considered by the appellate courts. The [c]ourt finds that the appeal in this case raised the appropriate issues.

In Strickland v. Washington, 104 S. Ct. 2052 (1982)[,] the U.S. Supreme Court set out the necessary requirements for ineffective assistance of counsel,

"A convicted defendant's claim that counsel's assistance was so defective as to require a reversal of a conviction or death sentence has two components. First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

9

defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results is reliable.  Unless the defendant makes both showings it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process and renders the results unreliable."

This [c]ourt finds in this case that the trial attorney made no errors that deprived the [petitioner] of a fair trial.

The [c]ourt finds that the advice given and services rendered by the [petitioner's] counsel was within the range of competency demanded by an attorney in a criminal case and that [trial counsel's] representation of the [petitioner] in this trial complied with the requirements set out by the Supreme Court of Tennessee in Baxter v. Rose, 523 S.W.2d 930.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the relief sought by the petitioner in his Petition for Post-Conviction Relief is hereby denied.

Since the petitioner has failed to include in the record on appeal a copy of the transcript of the post-conviction hearing, the record is insufficient for us to conclude that the post-conviction court erred in its dismissal of the petition.  Accordingly, that action is affirmed.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's denial of the post-conviction petition.

_____

ALAN E. GLENN, JUDGE

10