# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 5, 2010

## CALVIN FLEMING v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5045     Joseph H. Walker, III, Judge**

---

**No. W2010-00173-CCA-R3-PC  -  Filed January 18, 2011**

---

The Petitioner, Calvin Fleming, appeals from the Tipton County Circuit Court's denial of post-conviction relief from his conviction for attempted first degree murder. On appeal, the Petitioner argues that trial counsel was ineffective in failing to obtain a mental evaluation and in failing to inform the trial court of the absence of the mental evaluation at trial. He also argues that trial counsel was ineffective in failing to object to the State's introduction of the victim's medical records on the basis that they violated his Sixth Amendment right to confront witnesses against him and that appellate counsel was ineffective in failing to raise the confrontation issue on appeal. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the Petitioner-Appellant, Calvin Fleming.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Tyler R. Burchyett, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Factual Background.** The underlying facts in this case were summarized by this court on direct appeal:

> Shannon Beasley, a sergeant with the Tipton County Sheriff's Department, testified that he was dispatched to the intersection of Simmons

Road and Adams Street, near the entrance to Wilkinsville Trailer Park, where a man was allegedly beating a woman. When he arrived at the crime scene, he observed an unattended vehicle in the road. Sergeant Beasley was then dispatched to a home inside Wilkinsville Trailer Park, and, once inside, he saw the victim whose chest was bleeding.

Chad Harber, who lives near the intersection of Simmons Road and Adams Street, testified that around 6:00 p.m. he saw a man in a Lincoln Town Car ram the rear of a Ford Contour twice. The man inside the Town Car went to the Contour and beat the woman inside. Harber saw the woman get out of the car as the man beat her and then enter a different nearby vehicle. The man returned to the Town Car and drove toward the highway. On cross-examination, Harber testified that he did not see the man kick or stomp the woman.

Vickey Cook testified that while driving on Simmons Road during the evening hours she saw a damaged car and a couple fighting. The woman was in the passenger seat of a car, and a man stood outside the car moving his arm up and down. The man struck the woman about three times, and the woman then ran toward Cook's car screaming for help. The man pushed the woman down in front of Cook's car and continued to beat the woman, hitting her about four times. Cook sounded her car horn, the man stopped hitting the woman, and then the man drove away. The woman, who was covered with blood, finally stood up and came to Cook's car. Cook let her in the car, took the woman to the woman's father's house, and then helped the woman call 911. Cook explained that the woman tried to telephone 911 but lost consciousness before making the telephone call. An ambulance and police officers arrived, and the ambulance took the woman away. On cross-examination, Cook acknowledged that it was dark outside when she witnessed these events.

Christy Fleming, the victim, testified that she has been married to the Defendant for seven years, and they separated on January 3, 2005. After the separation, Fleming and her children moved to her mother's house. Fleming knew that the Defendant wanted her to return, but she did not speak with him.

Fleming described how, nine days after their separation, the Defendant attacked her on her way from work to her father's house. She saw the Defendant standing next to his car with its hood and trunk lids raised. She explained that she thought the Defendant had followed her because he knew

when she left her place of employment, he knew where she was heading, and he had stopped his car at an intersection that was fifteen minutes away from her father's home. She pulled over to the Defendant and told him not to follow her. The Defendant replied that he was not bothering her, and Fleming returned to her vehicle and headed toward her father's house. She again noticed the Defendant following her. While stopped at an intersection, her vehicle was struck from the rear, and then the Defendant came to her car, opened her door, and began stabbing her. Fleming thought that the Defendant stabbed her five times in the chest. He also stabbed her in the stomach, arm, leg, and neck. She recalled kicking, screaming, and asking God to help her. Suddenly, she found herself on the pavement, and the Defendant stomped on her chest area where he had previously stabbed her. Fleming heard a car horn, then rose from the pavement, went to a nearby car, and asked the driver to take her to her father's house. Fleming could not recall all the events that occurred at her father's house. Since being treated at a hospital, Fleming received a Percocet prescription, and she still experiences pain.

On cross-examination, Fleming acknowledged that when she first saw the Defendant on the day of the attack the Defendant was already at an intersection between her place of employment and her father's house. She did not recall the Defendant telling her that he was putting oil in his car when she initially stopped to speak with him. She denied that the Defendant asked her if she was allright after he rear-ended her vehicle and that she then pulled out a knife that the Defendant later used.

Billy Daugherty, an investigator with the Tipton County Sheriff's Department, described how he investigated the crime scene at the intersection of Simmons Road and Adams Street, how he located the Defendant's vehicle, and how he diagramed the crime scene. Scottie Delashmit, an investigator with the Tipton County Sheriff's Department, described his involvement with the investigation of this crime. He went to Fleming's father's house after Fleming had been taken to the hospital and saw some wrappers that the EMTs had used and a large amount of blood on the kitchen floor. He explained that the Defendant became a suspect, and the authorities located the Defendant's vehicle. A photograph of the damaged vehicle was entered into evidence.

Based upon this evidence, the jury convicted the Defendant of attempted first degree murder and of aggravated assault.

State v. Calvin Fleming, No. W2006-00098-CCA-R3-CD, 2007 WL 609889, at *1-3 (Tenn. Crim. App., at Jackson, Feb. 27, 2007). The trial court sentenced the Petitioner as a Range III, career offender to concurrent sentences of sixty years for the attempted first degree murder conviction and fifteen years for the aggravated assault conviction, for an effective sentence of sixty years. Id. at *1. On direct appeal, this court merged the aggravated assault conviction into the attempted first degree murder conviction because the two convictions violated the principles of double jeopardy. Id. at *7.

The Petitioner filed a pro se petition for post-conviction relief on February 26, 2008. Following the appointment of a public defender, the Petitioner chose to retain counsel. Because retained counsel had a conflict of interest, new counsel was retained, who filed an amended post-conviction petition. Following an evidentiary hearing, the trial court entered an order denying post-conviction relief on January 6, 2010, and the Petitioner filed a timely notice of appeal.

**Post-Conviction Hearing.** At the January 6, 2010 post-conviction hearing, the Petitioner presented testimony from trial counsel, entered an affidavit signed by appellate counsel, and testified in his own behalf. The State entered a mental evaluation of the Petitioner conducted by appellate counsel in July 2009.

Trial counsel testified that he had practiced law for thirty-four years and had tried approximately fifty cases. He stated that the Petitioner retained him prior to the preliminary hearing.

Trial counsel stated that he was able to view the State's entire file pursuant to an open file policy. Although the victim refused to speak with trial counsel, the Petitioner's sister was in constant contact with the victim and had learned that the victim was "was considering asking the State to be lenient [with the Petitioner]" Trial counsel stated that he discussed the case with the Petitioner several times, and they prepared the case together.

Because the Petitioner had no memory of the incident in this case, trial counsel requested that the Petitioner have a mental evaluation more than once. However, after speaking to one of the Petitioner's treating physicians, trial counsel realized that the Petitioner most likely would not be entitled to any mental defenses:

[S]oon after [the Petitioner] was released from the jail he went to Lakeside and stayed there for a period of time, and I don't recall, I think a week or so.

After he was released from Lakeside, we got a copy of those records, and then we later talked to the doctor. We had some difficulty contacting him,

-4-

but I remember this very well. I was on my way with my family out of town, and the doctor called my office and my office called me. And I pulled off the side of the road and talked to the doctor about [the Petitioner's] case, because we were – we knew that we didn't have a lot of options in [the Petitioner's] case based on the way it had developed, or the facts had been.

And so I asked the doctor about [the Petitioner] and the likelihood of us being able to proceed with some kind of insanity or diminished capacity or something, and he said no, based on the fact that [the Petitioner] had a serious drug issue, and he said he didn't see anything like that. So that pretty much closed that door as a reality. But we still, I think attempted to get him evaluated.

Trial counsel stated that orders requiring an evaluation were entered following his discussion with the Petitioner's doctor at Lakeside, although an evaluation was never obtained. When asked if he notified the trial court on the day of trial that an evaluation was never performed on the Petitioner, trial counsel stated, "I don't remember specifically saying it on the day of trial. We entered several Orders trying to get him evaluated."

Trial counsel said that he received the victim's medical records "very late[,]" and he objected to their introduction. He said that he did not have a doctor evaluate the victim's medical records. When asked why he objected on the ground of relevance when the victim's medical records were admitted at the end of trial, trial counsel responded, "I don't know that the [victim's medical] records would be [relevant]. I don't know what the probative value of the actual records would be. Now, the testimony about the records, yes. But I never could see where there was a need for that." He added, "My position was that the testimony of the victim, the pictures that were introduced – as I remember there were pictures introduced – that was sufficient to establish serious bodily injury in this case." Trial counsel acknowledged that the legal basis for the objection sounded more like an argument regarding the cumulativeness of the evidence rather than the relevancy of the evidence. Trial counsel said that he might have read the case of Crawford v. Washington but that he did not "remember it right off [sic]." However, he stated that he was familiar with the confrontation clause of the United States Constitution. He admitted that he did not raise an objection to the victim's medical records on the basis that they violated the Petitioner's right to confront the witnesses against him.

On cross-examination, trial counsel stated, "There were several Orders [regarding the mental evaluation] entered, and they were sent out to particular facilities, and they'd send them back saying this is not the right place. And then we'd get another Order entered, and that would be sent out. And that's what was happening." In addition, he reiterated that the

-5-

Petitioner's physician from Lakeside informed him that he "wasn't getting anywhere with any kind of mental defense and suggested that [the Petitioner] had a serious drug problem[.]" Trial counsel said that although he continued to seek a mental evaluation, he did not believe an evaluation was going to change the outcome of the Petitioner's trial. Finally, he stated that he did not believe that there was any case law that prevented the admission of the victim's medical records based on the confrontation clause.

An affidavit signed by appellate counsel was admitted into evidence at the post-conviction hearing. In the affidavit, appellate counsel stated that on August 2, 2006, the date he filed the Petitioner's appellate brief, he understood that the victim's medical records "were admissible under the Tennessee Rules of Evidence, and [he] did not believe this issue should be included in the brief." Appellate counsel also stated it was not until June 12, 2009, when the United States Supreme Court issued its opinion in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), that the "admission of medical records could be found by the Courts to be subject to cross-examination under the confrontation clause of the United States and Tennessee Constitution[s]."

The Petitioner testified that he spoke with trial counsel "about three times" regarding his case. He stated that trial counsel did not explain the trial process to him.

Following the Petitioner's testimony, the State entered the mental evaluation of the Petitioner that was conducted by appellate counsel in July 2009. The evaluation stated that it was the physician's opinion that the Petitioner had "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." In addition, the evaluation stated that it was the physician's opinion that "at the time of the commission of the acts constituting the offense, [the Petitioner] was able to appreciate the nature or wrongfulness of such acts."

## ANALYSIS

On appeal, the Petitioner argues that trial counsel was ineffective in failing to obtain a mental evaluation and in failing to inform the trial court that an evaluation had not been performed. He also argues that trial counsel was ineffective in failing to object to the State's introduction of the victim's medical records on the basis that they violated his Sixth Amendment right to confront witnesses against him and that appellate counsel was ineffective in failing to raise the confrontation issue on appeal. In response, the State argues that this court should affirm the denial of post-conviction relief because the Petitioner failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence.

The Petitioner contends that he received ineffective assistance of counsel. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both

if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

**I. Mental Evaluation.** The Petitioner argues that trial counsel was ineffective in failing to obtain a mental evaluation and in failing to inform the trial court that an evaluation had not been performed. He claims that trial counsel's performance regarding the mental evaluation was deficient and that he was prejudiced by this deficiency because "it is impossible to now ascertain his mental state some 5 years ago."

In response, the State contends that there was no showing of deficiency. First, trial counsel was informed by one of the Petitioner's treating physicians that any mental defenses would not be successful and that the Petitioner had a serious drug abuse problem. Second, trial counsel attempted to obtain a mental evaluation of the Petitioner several times, despite the fact that these attempts were unsuccessful. The State also argues that the Petitioner has failed to prove any prejudice, given that a mental evaluation of the Petitioner prior to the post-conviction hearing established that the Petitioner was competent at the time of the offense and at the time that he filed his petition for post-conviction relief. We agree with the State.

In the order denying post-conviction relief, the trial court determined that trial counsel's performance was neither deficient nor prejudicial regarding the mental evaluation:

Petitioner maintains counsel was deficient in the mental examination of petitioner. Counsel spoke with the doctor at Lakeside who examined petitioner, and there was no defense in this area. The later examination done in 2009 (exhibit 3) shows that counsel was not deficient in this area. The Court finds that petitioner failed to show how counsel was deficient in this regard, or how petitioner was prejudiced.

The record does not preponderate against the findings of the trial court. Trial counsel's failure to obtain a mental evaluation or failure to notify the court of the absence of

a mental evaluation was neither deficient nor prejudicial. Despite being informed by the Petitioner's treating physician that no mental defenses were available to the Petitioner, trial counsel continued to seek orders directing mental evaluations from the trial court. Moreover, the mental evaluation done prior to the post-conviction hearing establishes that the Petitioner was competent to stand trial and appreciated the wrongfulness of his acts at the time of the crime. Accordingly, the Petitioner has failed to prove that trial counsel's performance regarding the mental evaluation was either deficient or prejudicial.

**II. Victim's Medical Records.** The Petitioner argues that trial counsel was ineffective in failing to properly object to the introduction of the victim's medical records on the ground that the records violated his Sixth Amendment right to confront witnesses against him pursuant to Crawford v. Washington, 541 U.S. 36 (2004). Citing Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), he contends that "he had a right to confrontation because the records were testimonial in nature." In addition, the Petitioner argues that appellate counsel was ineffective in failing to raise the confrontation issue regarding the introduction of the victim's medical records. He asserts that although "trial counsel failed to properly frame the objection, the issue of the admissibility of the records was raised by trial counsel in petitioner's motion for new trial" and should have been raised by appellate counsel as plain error on direct appeal. Specifically, the Petitioner argues that appellate counsel should have asserted that the medical records, which were admitted based on an affidavit of the custodian of the records, were "testimonial in nature rather than simply business records." He further argues that the medical records were effectively "stand alone evidence" because neither party presented expert testimony to "interpret or explain" the records. In other words, he claims that the analysis in Melendez-Diaz regarding "lab reports and affidavits by lab technicians" applies to the victim's medical records in this case.

In response, the State argues "it is pure speculation at this point in time whether records generated in the process of rendering medical treatment fall under the Melendez-Diaz exception." Therefore, it contends that trial counsel was not ineffective in failing to raise an objection based on the confrontation clause and that appellate counsel was not ineffective in failing to raise this issue on appeal. Moreover, the State argues that even if the medical records do fall within the exception established by Melendez-Diaz, trial counsel and appellate counsel cannot be deemed deficient "for failing to anticipate a change in the law." Finally, the State contends that even if trial counsel and appellate counsel's performance is assumed to be deficient, the Petitioner has failed to establish prejudice because the medical records "were cumulative to the victim's testimony and photographs regarding her injuries" and were therefore "not integral in the State's case." We agree with the State but note the Petitioner's waiver of this issue.

In the order denying post-conviction relief, the trial court stated the following regarding the confrontation issue:

> Petitioner maintains counsel was deficient in failing to object properly to the introduction of medical records. Counsel did object. Before the trial began, counsel objected. See, page 2, exhibit 2, transcript of the evidence. "I would object to them being introduced into this record, before this jury, for any purpose[ .] . . ." And again at the time the records were introduced, counsel objected. See page 103. The court over-ruled the objection. Counsel was not deficient. In addition, the court finds counsel on appeal was not deficient by failing to assign as error the introduction of the records. The records were properly admitted, and there was ample other proof that the defendant/petitioner was the person responsible, and the injuries were extensive. The Court finds that petitioner failed to show how counsel was deficient in this regard, or how petitioner was prejudiced.

We initially note that the Petitioner failed to include a copy of the victim's medical records in the record on appeal. Accordingly, any issues regarding trial counsel's failure to object to the introduction of the victim's medical records or any issues regarding appellate counsel's failure to raise a confrontation issue on direct appeal are waived. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811 (Tenn. Crim. App.1979); Vermilye v. State, 584 S.W.2d 226 (Tenn. Crim. App.1979)). Because we are unable to evaluate the medical records admitted in this case, the Petitioner's ineffective assistance of counsel claims regarding the records are waived.

Waiver notwithstanding, we agree with the State that neither trial counsel nor appellate counsel was required to anticipate changes in the law regarding the confrontation clause. See Jeffrey Owen Walters v. State, No. M2008-01806-CCA-R3-PC, 2009 WL 3400687, at *6 (Tenn. Crim. App., at Nashville, Oct. 20, 2009) ("Counsel's performance was not deficient for failing to anticipate a change in the law as it existed in Tennessee at the time of Petitioner's direct appeal."), perm. to appeal denied (Tenn. Apr. 14, 2010). The Melendez-Diaz case, which was decided years after the Petitioner's trial and appeal, was the first time that the analysis in Crawford had been applied to affidavits of expert witnesses who failed to testify at trial. Melendez-Diaz, 129 S. Ct. at 2532. Accordingly, trial counsel and appellate counsel are not deficient for failing to argue that the victim's medical records in the Petitioner's case fall within the exception created by Melendez-Diaz. Therefore, waiver

notwithstanding, the Petitioner has failed to establish that trial counsel or appellate counsel were ineffective regarding the victim's medical records.

## CONCLUSION

**Conclusion.** Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE