# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 12, 2015

## RAY NEIL THOMPSON v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
#### No. 2008-D-3845      Steve R. Dozier, Judge

---

### No. M2014-01935-CCA-R3-PC – Filed November 5, 2015

---

The Petitioner, Ray Neil Thompson, appeals from the denial of post-conviction relief by the Criminal Court for Davidson County. He was convicted by a jury of one count of aggravated robbery and later entered a guilty plea to two counts of aggravated robbery and one count of evading arrest. For these offenses, he received an effective sentence of fifty years at 100 percent in the Tennessee Department of Correction. On appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon our review, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

David Harris, Nashville, Tennessee, for the Defendant-Appellant, Ray Neil Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was indicted for three counts of aggravated robbery involving three Nashville businesses, Smoothie King (count one), Twenty-One and Up Video (count two), Baskin Robbins (count three), and evading arrest (count four). See T.C.A. §§ 39-13-402, -16-603. Following severance of count one, a jury convicted the Petitioner as charged, and he received a sentence of twenty-seven years at 100 percent as a Range III, persistent offender. The Petitioner later entered "open" guilty pleas for the remaining counts, for which he received two twenty-three year sentences at 100 percent for counts two and three and eleven months and twenty-nine days for count four. The trial court

ordered counts two, three, and four to be served concurrently with one another but consecutively to count one, for an effective sentence of fifty years. In two separate direct appeals, this court affirmed the convictions and sentences in counts one through four. See State v. Ray Neil Thompson, No. M2011-01613-CCA-R3-CD, 2013 WL 53977 (Tenn. Crim. App. Jan. 3, 2013), perm app. denied (Tenn. May 7, 2013) (direct appeal of count one); State v. Ray Neil Thompson, No. M2012-01064-CCA-R3-CD, 2013 WL 1912591 (Tenn. Crim. App. May 8, 2013), perm. appeal denied (Tenn. Sept. 11, 2013) (direct appeal of counts two through four).

In his appeal of count one, the Petitioner argued that the trial judge (1) improperly refused to recuse himself; (2) improperly denied a motion to suppress Appellant's statement; and (3) improperly sentenced Appellant. Ray Neil Thompson, 2013 WL 53977, at *1. In his appeal of counts two through four, the Petitioner argued that he was improperly sentenced under Tennessee Code Annotated section 40-35-501(k)(2) because, in the commission of the offense, he used a water gun and not a firearm as described in the statute and that the trial court improperly imposed consecutive sentencing. Ray Neil Thompson, 2013 WL 1912591, at * 1.

As relevant to the issues presented in this post-conviction appeal, the facts supporting count one, the aggravated robbery of the Smoothie King, as outlined in this Court's opinion on direct appeal are as follows:

> [A]n employee [of Smoothie King in Belle Meade] was preparing to close that store on the night of September 12, 2008, at around 9:00 p.m. [She] was alone in the store after her two co-workers left to take out the trash. [The Petitioner] entered the store. [She] asked [the Petitioner] if he needed any help. [The Petitioner] replied that he was trying to decide what type of smoothie he wanted to order. [The Petitioner] walked around to the cash register at that point and pulled an object out of his pocket that was wrapped in a bandana. [She] stated that it appeared to be a gun. [The Petitioner] pointed the object at [the employee] and instructed her to take the money out of the register. [The Petitioner] took the money out of the tip jar as [the employee] emptied the register. [The Petitioner] asked for a bag. [She] told [the Petitioner] she did not have a bag. [The Petitioner] told [the employee] to get down on the ground. . . [and] she was able to pull the silent alarm to alert authorities.
>
> Four days after the incident, [the employee] identified [the Petitioner] in a photographic lineup. She was about 80 percent sure that the person in the photograph was the perpetrator. [The employee] later identified [the Petitioner] in person and at trial. She was confident that she

positively identified [the Petitioner] because during the robbery she was able to observe [the Petitioner] from a distance of approximately three feet and had an unobstructed view of his face.

Ray Neil Thompson, 2013 WL 53977, at *1.

Three other witnesses provided similar descriptions to the police and one victim provided police with a partial license plate number. Id. The Petitioner was eventually arrested and police discovered "an orange and yellow water gun wrapped in a red bandana" inside the Petitioner's vehicle. Upon apprehension, the Petitioner was bitten by a canine officer and taken to the hospital. Id. at *2. While he was at the hospital, he was interviewed by police about the robberies and told the interviewing officer that he was addicted to crack cocaine. Id. The officer did not think that the Petitioner appeared intoxicated or impaired during the interview. Id. The Petitioner later testified that, on the day of his arrest, he was on "drug bender" and had not slept in three days. Id. He stated that during the interview, he could not think clearly. Id.

At the January 27, 2012 guilty plea colloquy for counts two through four, the Petitioner agreed to the following factual basis supporting the plea:

[T]he State's proof in count two would be that on September 14th of 2008 at approximately 6:15 in the evening,[ the Petitioner] entered into the 21 and Up Video Store located on White Bridge Road here in Davidson County. He had what appeared to be a handgun wrapped in a bandana. When he went in, he pointed the item in the direction of the clerk, Ms. Elaina Harper. He took money from the 21 and Up Video Store without her consent and left. There was in this particular case a surveillance video, a color surveillance video, that captured [the Petitioner] on the video as well as part of the vehicle in a nearby parking lot.

The [Petitioner] then on September 16th, 2008 in the evening hours also went to 840 Hillwood Boulevard to the Baskin Robbins there also here in Davidson County. He went in likewise, on that particular occasion and had what appeared to be a weapon wrapped in a bandana and used that to threaten Ms. Hunabin Bauctok (phonetic) took money from the store without her consent. He fled during that time. A partial tag number was recovered from a witness in that particular case. As a result of that partial tag and the surveillance video with the vehicle, the [Petitioner] was developed as a suspect. And on September 16th, 2008, later in the same evening, officer Sun Yung Park (phonetic) encountered the [Petitioner] at 920 Chickasaw where he saw the [Petitioner] in the vicinity of the vehicle

-3-

matching the get-away vehicle in these robberies. When Officer Park ordered the [Petitioner] to stop, he fled on foot and was ultimately apprehended when K–9 found where he was hiding.

Ray Neil Thompson, 2013 WL 1912591, at *1-2. In the petition to enter his guilty plea signed by the Petitioner, it was noted that the Petitioner faced eight to thirty years at 100 percent for each count of aggravated robbery. Id. at *4. Within the same signed form, the Petitioner acknowledged that the trial court would consider (1) all of his prior convictions, (2) each count of the multiple offense indictment as a separate offense, and (3) that each count of the multiple offense indictment may be ordered to be served consecutively. Service at 100 percent for each count of aggravated robbery was also discussed at the guilty plea hearing. Id.

Following the denial of his direct appeals, the Petitioner filed an eighty-page, handwritten petition for post-conviction relief on December 26, 2013. The trial court appointed counsel, who filed an amended petition incorporating and adopting all of the Petitioner's grounds for relief, on July 14, 2014.

At the July 31, 2014 post-conviction hearing, the Petitioner and four attorneys who represented the Petitioner at different stages of his case testified. The Petitioner said that he and first counsel "didn't click" and that first counsel was hostile toward him. He conceded that first counsel had presented him with a plea offer from the State for an eighteen-year sentence at 100 percent. The Petitioner claimed that he rejected the offer because counsel failed to adequately inform him of the controlling law and weight of the evidence against him. He said that he did not understand why he should accept the offer because he did not realize that the use of a water gun could elevate his charge to aggravated robbery, thus rendering him a persistent offender. The Petitioner testified that he could not make an informed decision regarding the plea offer and was therefore "forced into trial." He claimed that he did not understand this until several months later when second counsel explained why he was to be sentenced at 100 percent.

The Petitioner claimed that second counsel filed a severance motion against his will, and put him "in greater danger and detriment . . . because it subjected him to more time." He was adamant in asking counsel not to file the motion and wrote him a letter to that effect. He said he would rather face the charges against him in one proceeding rather than "piece by piece." He stated that, despite his objection, second counsel filed the motion without consulting him, but told him that he did not think it would be granted. The Petitioner then confirmed that the motion was granted, and count one of aggravated robbery was severed from the other aggravated robbery charges.

The Petitioner testified that neither first nor second counsel communicated with him. On two occasions, he told the trial court that his counsel was ineffective and displayed bias and prejudice toward him. He also filed a complaint with the Board of Professional Responsibility. The Petitioner asserted that his complaints "seemed to fall on deaf ears," and that out of an "act of desperation," he spit on second counsel. After this altercation, third counsel was appointed to the Petitioner's case and represented him at trial.

The Petitioner testified that third counsel was ineffective by failing to suppress a photographic lineup at trial. He contended that the photo array was "tainted" because the background of his photo was darker, and he was the only person in the lineup wearing a white shirt. He noted that the perpetrator of the aggravated robbery offenses was also alleged to have worn a white shirt. He thought that these disparities created "issues of suggestivity" that brought harm to his case. He acknowledged that he did not discuss suppressing the lineup with third or fourth counsel, but he thought they "potentially overlooked" the issue. The Petitioner also asserted that third counsel failed to raise the issue of prosecutorial vindictiveness. He argued that after conflict arose with first counsel, "everybody took a prejudice position toward [the Petitioner]; especially, the DA" for invoking his right to seek effective assistance of counsel. He claimed that the State withdrew their first plea offer in part because he had made complaints about his representation and requested new counsel. The Petitioner said that when he confronted third counsel with the vindictiveness issue, he was told that nothing could be done.

On cross-examination, the Petitioner said that he rejected the State's initial plea offer because first counsel did not adequately inform him. He conceded that first counsel advised him to accept the offer of eighteen years and could see now that it was good advice. He agreed that he rejected a second plea offer of thirty years at 100 percent even though first and second counsel told him that he was eligible for a maximum sentence of ninety years at 100 percent. The Petitioner acknowledged that there were surveillance videos that showed him committing two of the aggravated robbery offenses. He claimed that first counsel only went over one of the videos with him and never showed him the audio recording of his police interrogation. He testified that he was not aware of the video evidence when he rejected the first plea offer but confirmed that he had seen the video evidence before rejecting the second. He said that he rejected the second offer because "the damage had already been done," and he felt "forced into a trial situation."

On redirect examination, the Petitioner confirmed that it was his "reasoned opinion" that he would have had a better result at sentencing if the judge had seen all the evidence at once, rather than separately. He claimed that he had conveyed this opinion to second counsel. He also stated that, after trial, he was advised to enter a guilty plea for

the remaining charges because there was a good possibility the sentence would run concurrent with his trial sentence.

First counsel, who represented the Petitioner from the preliminary hearing to criminal court, was an assistant public defender for nearly ten years when he was appointed to the Petitioner's case. He met with the Petitioner on court dates and for multiple hours at the prison where he was incarcerated. He testified that they discussed the sentencing exposure and reviewed the discovery together. He remembered that they watched the video surveillance together but could not recall whether they reviewed the audio recording. Counsel further testified that the Petitioner rejected the initial eighteen-year plea offer. He explained that the State had no obligation to keep the offer open and that it was common for a plea offer to increase after it is rejected and more investigation was done. He also noted that the State accepted his original counter-offer of twelve to twenty years at a sentencing hearing, but the Petitioner changed his mind and refused the plea agreement. Counsel confirmed that he and the Petitioner had communication problems and that on at least two occasions, the Petitioner tried to remove him from the case.

Second counsel, one of the most experienced public defenders in his office, assumed the Petitioner's case from first counsel due to communication problems. He testified that he had reviewed the evidence with the Petitioner and had "an extended discussion" about why the Petitioner qualified to serve his sentence at 100 percent. Second counsel also communicated with the State about the previous eighteen-year plea offer, but the offer was no longer available because the State had reviewed the video evidence of the crime. The State reevaluated the cases and increased the offer to thirty years at 100 percent, which the Petitioner declined. Second counsel testified that he filed a motion to sever the Petitioner's charges and that the motion "was a strategic decision designed to keep out damaging proof that would have more than likely lead to a conviction" at trial. He attempted to explain the advantages of severing the charges, but acknowledged that the Petitioner repeatedly opposed the motion. Second counsel proceeded with the motion because he thought not doing so would have amounted to ineffective assistance of counsel. On cross-examination, he disagreed that the Petitioner had a well-reasoned objective for trying the cases together.

Third counsel, the Metropolitan Davidson County Public Defender, assumed representation of the Petitioner on the day his trial was set after he had spit on second counsel. She had been a public defender for seventeen years and had handled a wide range of criminal cases. She selected fourth counsel, another assistant public defender, to assist her in trying the case. She did not recall or believe that she and the Petitioner had ever discussed suppressing the photographic lineup or prosecutorial vindictiveness. She indicated that there was no legal basis for filing a motion to suppress the photographic

lineup. She also noted that the victim that had identified the Petitioner from the lineup had also identified the Petitioner at the preliminary hearing and at trial. Lastly, she testified that she told the Petitioner the potential sentences he faced at trial and that he understood.

Fourth counsel, an assistant public defender for nearly eighteen years, had handled thousands of criminal cases when he was assigned to the Petitioner's case. He reviewed the evidence, law, and sentence ranges with the Petitioner. He considered the audio recording of the police interrogation harmful evidence because it referenced the Petitioner's drug use and prior convictions. He said that even the redacted version of the audio recording could have led to the introduction of damaging evidence. He asserted that it was a strategic and tactical decision not to use the recording at trial. On cross-examination, he agreed that the statements in the recording did not amount to a full confession, but they were nonetheless "damning." He also agreed that the interviewing detective's direct testimony was the only evidence of the police interrogation introduced at trial. He could not recall deciding not to file a motion to suppress the photographic lineup. He testified, "if I would have seen something that would have lead me to believe that it would be beneficial, I would have filed it." The defense theory centered on the fact that the victim was only eighty percent sure that she had selected the perpetrator from the photographic lineup and that the twenty percent supported reasonable doubt that it was not the Petitioner.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On September 8, 2014, the court entered a written order denying relief. It is from this order that the Petitioner now appeals.

## ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred in concluding that counsel rendered effective assistance of counsel.[1] He contends that first counsel was deficient by failing to adequately inform him about the eighteen-year plea bargain and second counsel was deficient by filing the motion to sever. He argues that third and fourth counsel were ineffective by failing to raise the issue of prosecutorial vindictiveness, failing to suppress the photographic lineup, and failing to introduce the audio recording of his police interview. The State responds that the post-conviction court properly denied relief because the Petitioner provided no proof of his allegations at the post-conviction hearing and thus failed to establish ineffective assistance of counsel. We agree with the State.

---

[1] We have re-ordered the Petitioner's issues for clarity. We also note that the Petitioner raised several other issues in his petition for post-conviction relief which were not developed at the post-conviction hearing nor supported by argument in the brief. These issues are accordingly waived.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotation marks and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order

or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the evidence establishes that the attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). This two-prong Strickland test applies to claims of ineffective assistance of counsel at either the trial or appellate levels. See Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995) (citing Evitts v. Lucey, 469 U.S. 387 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**I. First Counsel and Failure to Adequately Inform.** The Petitioner argues that because first counsel "fail[ed] to provide even the most basic and fundamental information regarding the prosecution's case against him," he had no choice but to reject any offer from the State. He contends that but for counsel's error, he would have accepted the State's initial plea offer of eighteen years at 100 percent. In denying relief, the post-conviction court reasoned as follows:

> [First counsel] . . . said that he went over the evidence against the petitioner, as well as the law and potential exposure. The petitioner acknowledged that [first counsel] showed him the video evidence and told the petitioner his exposure at trial. The petitioner also said that [first counsel] advised him to take the offer and now sees that was good advice. The petitioner has failed to prove this allegation by clear and convincing evidence.

Upon our review, we agree with the post-conviction court and conclude that the Petitioner has failed to prove that first counsel was deficient in providing him with information about his case in order to accept the eighteen-year plea offer. Although the Petitioner contends that there is ample proof in the record to establish that he was "bereft of information" at the time the eighteen-year plea offer was conveyed, he does not point out what information first counsel excluded from their plea discussions. Instead, he directs our attention to the multiple board complaints he filed against first counsel. Interestingly, in his letter to the Board, the Petitioner complains that first counsel continued to pressure the Petitioner, no less than four times, to consider and accept the eighteen-year offer and that it was likely to "go up" if he did not. The letter also outlines each of the Petitioner's requests for information about his case and how first counsel responded. While the Petitioner may have been dissatisfied with first counsel's tone and overall responsiveness, the letter demonstrates that first counsel's representation was well within the range of competence demanded of attorneys in criminal cases. Because the Petitioner has failed to establish deficient performance or prejudice arising therefrom, he is not entitled to relief on this issue.

**II. Second Counsel and Motion to Sever.** The Petitioner further argues that second counsel was ineffective by filing a motion to sever offenses over his direct objection. He believes that the partial severance led to a longer sentence because the imposition of consecutive sentences was more likely where the convictions arose from two separate proceedings. In its written order denying relief, the post-conviction court determined that:

> [F]iling the motion was a strategic decision and was made in the best interest of the client. [Second counsel] said that he thoroughly explained the benefits to the petitioner and he did not think the [petitioner's] reasons made sense. The petitioner has not shown that this decision was the result of unreasonable professional judgment. The petitioner has failed to prove this allegation by clear and convincing evidence.

In regard to this issue, the record shows that the Petitioner was indicted for three aggravated robberies, two of which were captured on video. Each robbery was of a business, occurred in the evening, and was committed with an item wrapped in a bandana fashioned to look like a gun. In addition to his trial testimony, second counsel memorialized his reasoning for filing the motion to sever in a letter to the Petitioner, the relevant portion of which provides:

> [The motion to sever] is [an] attempt to separate the four charges against you into distinct and individual trials during which the jury would not learn of the other allegations and would be focused only upon one

crime. At present, a trial consolidating all four charges would present all that evidence to the same jury at the same time. Obviously, that substantially increases the prospect of your conviction on all of the charges. Think of it this way-a juror might understand a single wrong in isolation or have a doubt about the identification by a single witness of you as a robber on Friday. But, if the same juror hears testimony that you did exactly the same thing on Sunday, and that you did the exact same thing on the next Tuesday . . . each of your individual charges becomes more believable. . . .

Thus, the reasons for the Motion to Sever are; 1. if successful, it has a tactical advantage outlined above and screws up the State's presentation of their case by requiring the witnesses to avoid mentioning the other charges; 2. if unsuccessful, it creates a potential error to be argued on appeal . . . .

Based on the above testimony and reasoning, we agree with the post-conviction court and conclude that the decision of second counsel to file a motion to sever was indeed tactical and did not amount to deficient performance. As an initial matter, our review of the Petitioner's letters during trial, his testimony at the post-conviction hearing, and the argument in his brief reveal that he is more aggrieved with the trial court's decision to impose consecutive sentencing in his cases than whether he was deprived of a fair trial due to second counsel's performance. In any event, we begin resolution of the issue presented with the well-settled proposition of law that this court will not second-guess the informed tactical and strategic decisions of trial counsel. Pylant v. State, 263 S.W.3d 854, 874 (Tenn. 2008) (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)). Moreover, separate offenses may be permissively joined if they are part of a common scheme or plan or are of the same or similar character. Tenn. R. Crim. P. 8(b). If, however, they are not part of a common scheme or plan or if the evidence of one is not admissible at the trial of the other, the defendant has a right to a severance of offenses. See Tenn. R. Crim. P. 14(b)(1). There are three categories of common scheme or plan evidence: "(1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999). For the offenses to reveal a distinct design, the modus operandi employed "must be so unique and distinctive as to be like a signature." Id. at 240; State v. Carter, 714 S.W.2d 241, 245 (Tenn. Crim. App. 1986). Evidence of signature crimes, likely the basis for joinder in this case, is typically offered to prove a defendant's identity. Moore, 6 S.W.3d at 239. Although the offenses do not have to be identical in every respect, a common scheme or plan is not found merely because there was evidence that the defendant committed the multiple offenses or because the similarities of the offenses outweigh the differences. Moore, 6 S.W.3d at 240-41.

"Rather, the trial court must find that a distinct design or unique method was used in committing the offenses ." Id. at 241. The danger in not severing offenses is that the jury will improperly find the accused guilty of a crime by inferring his propensity to commit the crime from the evidence of the other crimes. Id. at 239.

Although we are without the benefit of the motion to sever, the State's response, or the transcript from the hearing on the motion to sever offenses in this case, the record clearly shows that the decision of counsel to file the motion to sever was an informed part of his defense strategy.[2] In addition to the above letter, second counsel explained to the Petitioner that the trial court may or may not grant the motion. If the trial court denied the motion, then second counsel opined that the failure to sever would be grounds for a new trial in the Petitioner's direct appeal. See State v. Shirley, 6 S.W.3d 243, 247 (Tenn.1999), overruled on other grounds by State v. Copeland, 226 S.W.3d 287 (Tenn.2007) (reversing the denial of motion to sever on virtually identical facts and remanding for a new trial). Given the aforementioned authority, we cannot say that filing a motion to sever on these facts was improper. See e.g., Beamon v. State, No. E200801138CCAR3PC, 2009 WL 2922841, at *7-8 (Tenn. Crim. App. Sept. 14, 2009). Counsel made a well-informed, legally sound decision to file the motion to sever in this case. Accordingly, the Petitioner has failed to demonstrate deficient performance of counsel or prejudice to his case.

### III. Third Counsel and Prosecutorial Vindictivness and Photographic Lineup.
Next, the Petitioner contends that third counsel was ineffective by failing to suppress the photographic lineup introduced at trial and by failing to address the issue of prosecutorial vindictiveness. He argues that the State "demonstrated retaliatory behavior by withdrawing a plea bargain offer of 18 years at 100% in retaliation for [the Petitioner] invoking his right to challenge the underlying indictment, to file pretrial motions, and to insist on having the presentation of competent and zealous counsel in the process." In regard to the suppression of the photographic lineup, he argues that it was "unduly suggestive" and that third counsel's failure to challenge its use at trial caused harm to his case.

In the Petitioner's brief, he stresses that the photographic lineup was "obviously unduly suggestive" because none of the other photographs depicted persons wearing white and the backgrounds in the photographs were different than his. In resolving this

---

[2] We note that the appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)).

issue, we must, once again, point out that the Petitioner failed to include a copy of the photographic lineup in the record on appeal for our review. Nevertheless, third counsel testified that she did not have a legal basis to support a motion to suppress the photographic lineup. She explained that although the victim who selected the Petitioner from the photographic lineup said she was eighty percent certain that the Petitioner was the perpetrator of the offense, the victim later positively identified the Petitioner at the preliminary hearing and at trial. In addition, two of the aggravated robberies were recorded on video and depicted the Petitioner committing the crimes. In its written order, the post-conviction court noted that "[third counsel] did not believe there was a legal basis for the motion" and that the Petitioner failed to "prove[] any prejudice or show[] how not filing the motion to suppress impacted his trial or representation." We agree and conclude that the Petitioner is not entitled to relief on this issue.

In regard to the Petitioner's claim that third counsel failed to argue that the prosecutors were vindictive by increasing their settlement offer, we are guided by the following authority:

> "Prosecutorial vindictiveness" is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights....The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, the defendant may show "actual vindictiveness" that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. This showing is, of course, exceedingly difficult to make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicated "a realistic likelihood of 'vindictiveness[,]' " a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively.

State v. Michael Gentry, No. 01C01-9510-CC-00336, 1996 WL 648523, at *3 (Tenn. Crim. App. Nov. 8, 1996) (quoting United States v. Meyer, 810 F.2d 1242 (D.C. Cir.1987), cert. denied, 485 U.S. 940 (1988)).

In this case, as in Gentry, the record shows there was no reindictment. An initial 18-year offer of settlement by the State was made and repeatedly rejected by the

-13-

Petitioner. Second counsel advised the Petitioner that the eighteen-year offer was the best offer that the Petitioner was going to get and that the offer would likely increase. The record does not establish that the State, by increasing the offer to thirty years, attempted to punish the Petitioner for exercising his constitutional rights. The testimony at the post-conviction hearing further established that the State increased its offer after reviewing the video evidence capturing the Petitioner in the commission of the crimes. Finally, the Petitioner ultimately accepted the State's offer to plead guilty to the remaining two counts of aggravated robbery and evading arrest. This court has previously held that a defendant who ultimately accepts the State's offer to plead guilty gives up his claim of prosecutorial vindictiveness. See State v. Turner, 919 S.W.2d 346, 360 (Tenn. Crim. App. 1995) (holding that the issue of prosecutorial vindictiveness had been waived when the defendant has knowingly and voluntarily entered the plea of guilt). Having failed to establish deficient performance of counsel or prejudice to his case, the Petitioner is not entitled to relief on this issue.

**IV. Fourth Counsel and Audio Recording.** As his final ground for relief, the Petitioner argues fourth counsel was ineffective by failing to introduce the recording of his police interview. We disagree. In regard to this issue, fourth counsel, the testimony of whom the post-conviction court accredited, said that the defense did not use the audio because the Petitioner's statements were "damaging" and were of no benefit. Fourth counsel also said that it was a strategic decision not to utilize the audio from the Petitioner's interview with the police. Although we are without the benefit of the audio, based on fourth counsel's testimony, the Petitioner discussed his drug use and prior convictions during the recorded interview. Given this testimony, we are perplexed by the Petitioner's claim that fourth counsel was ineffective in failing *to admit* his statement to police. Our confusion is compounded by the fact that the Petitioner filed an unsuccessful motion *to suppress* the interview at trial and challenged the denial of the motion in his direct appeal. Ray Neil Thompson, 2013 WL 53977, at *5-6. We recognize the Petitioner's belief that fourth counsel's failure to admit the audio of the interview amounted to prejudice because the jury only heard the interviewing detective's testimony about the interview. However, based on the authority discussed in issue II, it is clear that fourth counsel made a well-informed strategic decision to exclude from trial the audio from the Petitioner's police interview. The Petitioner is not entitled to relief.

**CONCLUSION**

Discerning no error, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-14-