STATE of Tennessee, Appellee,

v.

Rodney Bernard BIBBS, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 9, 1991.

Permission to Appeal Denied by Supreme Court March 18, 1991.

Seymour S. Rosenberg, Memphis, Tenn., for appellant.

Charles W. Burson, Atty. Gen. for Tenn., and Gordon W. Smith, Asst. Atty. Gen., Nashville, Tenn., Hugh W. Stanton, Jr., District Atty. Gen., and James A. Wax, Jr., Phillip Gerald Harris, Asst. Dist. Attys. Gen., Memphis, Tenn., for appellee.

## OPINION

BIRCH, Judge.

The Criminal Court of Shelby County, Division I, approved a jury verdict convicting Rodney Bernard Bibbs, the defendant, of first-degree murder in the death of Shanique L. Page, age eleven. His sentence is imprisonment for life.

Bibbs appeals. In addition to contesting the legal sufficiency of the evidence upon which he was convicted, he contends: (1) that his Sixth Amendment right to a fair trial was violated by having been forced to select jurors from a venire in which blacks were underrepresented; (2) that the prosecutor exercised peremptory challenges in an unconstitutional manner; and (3) that his custodial statement was obtained in violation of his rights under the Federal and Tennessee constitutions.

We affirm the judgment of the trial court.

### I

The facts of record establish that on their way to North Carolina, the Page family stopped in Memphis and lodged at a local motel. Ms. Page and a friend who was travelling with her left the motel room in the late evening of August 9, 1988, to go to a coin laundry. They left Ms. Page's daughters, Shanique and Celina, in the room and instructed them not to leave.

At about 11 p.m. that night, Terrell L. Tackette, a motel guest, heard a woman's scream in an adjoining room, and he heard other noises which led him to think that a fight was occurring. He left his room and looked to the ground three stories below and saw a black girl lying prone beside his truck. At the same time, he saw a black man wearing a black uniform and holding a long aluminum pole. The same man also held a white object in his hands. Tackette descended the stairs and saw that the man had blood on his hands. When Tackette asked him what happened, the man replied, "Some black dude throwed this girl and beat her and run that way." He observed that the girl was still alive.

Tackette identified Bibbs in court as the man with whom he had this encounter on August 9, 1988. The pole he had seen Bibbs with proved to have been an aluminum extension pole that Bibbs had apparently taken from Tackette's truck. When Tackette saw it up close, it had blood on it. Also, Bibbs had taken a white container of paint thinner from Tackette's truck and poured it around the place where the girl lay. This container turned out to be the white object Tackette had observed in Bibbs' hands.

Memphis homicide detective Charles Shettlesworth was the principal investigator. Upon his arrival at the motel, he was directed to Room 331, the scene of the occurrence. He first noticed a footprint on the bathroom door. The door facing was off, the casing was splintered, and the strike plate was on the floor. This all indicated to him the bathroom door had been kicked in.

In the bathroom, Shettlesworth observed blood on the walls and ceiling, and he saw a large amount of blood in the bathtub, in the commode, and on the floor. The top of the commode had been removed and shattered—some pieces were on the floor and others in the bathtub. In addition to the large quantity of blood, Shettlesworth observed hair, part of a barrette, and a live .25 caliber round in the tub.

Bibbs was taken to the homicide office along with six other witnesses. Shettlesworth asked Bibbs about the incident. Bibbs, a security guard at the motel, explained that as he was making rounds, he

noticed a black male leaving Room 331. He thought this person was a police officer because he was wearing a uniform like those worn by Memphis police officers. He tried to stop the man to determine whether he was registered as a motel guest. The man ran off; Bibbs ran upstairs to check Room 331. He saw the victim lying on the pavement below and ran to her aid.

Shettlesworth noticed a large amount of blood on Bibbs' clothing, leading him to conclude that Bibbs had been more deeply involved than he first revealed. He then advised Bibbs of his *Miranda* rights; Bibbs elected to make a second statement. In it, he admitted to beating Shanique Page in Room 331 and pushing her over the third floor railing.

Bibbs elaborated and described an encounter with the victim that was initially sexual. At the victim's threat to the effect that, "I'm going to tell my mother that you tried to do bad things to me," Bibbs said that he "lost his head," slapped her, and threw her in the bathroom. She continued to cry, so he kicked open the bathroom door and began hitting her with the butt of a .25 caliber pistol. He next picked up the commode top and hit her with it. He decided to help her out of the bathroom and turn himself in, but as the victim got to the door she started screaming. At this point, he pushed her over the railing. After she landed on the ground, he went down and poured paint thinner around her in an effort to "mess up the investigation."

O'Brien Smith, M.D., an assistant medical examiner, testified about the condition of the body. He observed at least nineteen separate wounds on Page's head. Some were simple bruises or skin scrapes; others were tears in the skin. There were two deep tears on the victim's head that reached the bone. One of these tears involved an underlying skull fracture. Various scrapes and tears were seen along the chin, neck, cheekbone, and brow. Dr. Smith testified that the wounds had been inflicted "fairly close" together chronologically.

On the front of the body, Smith observed slashing-type cuts on her right thigh and left elbow area. A combination of bruises and abrasions were observed on her right shoulder, left chest, and left side of her abdomen. More scrapes and bruises were on the back of her body as well as on both shoulders and forearms. Additionally, the skin surface overlying the right shoulder blade was blistery. These blisters were consistent with exposure to a chemical agent such as petroleum distillate.

Page's internal injuries were massive. Her liver was torn, her lungs were bruised, and her brain was damaged along its circumference, with bleeding. Smith attributed death to overall damage to the brain and other internal injuries, or to the combined effect of all injuries.

Bibbs did not testify at trial, nor did he introduce any evidence.

■ When challenge is made to the sufficiency of the evidence, the standard for appellate review is whether, after considering the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime of first-degree murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Defendant's burden of showing insufficiency is heavy, since all conflicts in the testimony are resolved in favor of the state, and the state is entitled to the strongest legitimate view of the evidence as well as all reasonable or legitimate inferences that may be drawn therefrom. *State v. Roe,* 612 S.W.2d 192 (Tenn.Crim.App. 1980); *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978).

■ Moreover, the weight and credibility of testimony of a witness, and the reconciliation of conflicts in testimony, are matters entrusted exclusively to the jury as the triers of fact. *Withers v. State,* 523 S.W.2d 364 (Tenn.Crim.App.1975); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App. 1978).

■ Bibbs bases his assertion of evidentiary sufficiency upon his contention that he did not kill with the premeditation and

cool purpose required for first-degree murder. To the contrary, the record teems with circumstances from which the jury could infer that Bibbs premeditated and deliberated. To list a few:

1. The fierceness and atrocity of the attack;

2. The length of time from the first blow to the final act of pushing the victim from the third floor;

3. The enormous number of wounds and their location. *Houston v. State*, 593 S.W.2d 267 (Tenn.1980);

4. The number and variety of methods used to inflict the wounds;

5. The age and physical characteristics of the victim as rendering resistance unlikely and ineffective;

6. The victim was unarmed; and

7. The elaborate effort Bibbs mounted to appear uninvolved.

■ Thus, from a consideration of all of the evidence, it is possible that the jury could have found that during the struggle Bibbs decided to kill the victim—only a moment being required between the plan to kill and its execution. *State v. Martin*, 702 S.W.2d 560 (Tenn.1985); *Clarke v. State*, 218 Tenn. 259, 402 S.W.2d 863 (1966).

We find the evidence more than sufficient to convince any rational trier of fact that Bibbs was guilty of first-degree murder beyond any reasonable doubt in accord with the standards prescribed by Tennessee Rules of Appellate Procedure 13(e) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## II, III

■ The defendant's next two issues concern the racial composition of the jury. In the first, he asserts that blacks were underrepresented on the venire from which his jury was selected. Specifically, he contends that the trial judge erred in overruling his motion to strike the venire because it did not represent a cross-section of the community. The record contains no proof to support this contention. In the absence of a proper record, we must presume that the trial judge ruled correctly. Tennessee Rules of Appellate Procedure 36(a).

The second of defendant's jury issues is his contention that the state exercised its peremptory challenges in an unconstitutional manner.

In the case of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the United States Supreme Court forbade the exercise of peremptory challenges for purely racial reasons and conferred upon a defendant of the same race as the race of those excluded jurors standing to object to such exercise. Our supreme court has approved of and applied the *Batson* doctrine in *State v. Jones*, 789 S.W.2d 545 (Tenn.1990).

■ It is the defendant who must present a *prima facie* case of racial discrimination. This may be shown by proof of a pattern of racially biased exercise of peremptory challenges, or by other means. And if he does, the burden shifts to the prosecution to provide a rational, race-neutral explanation for the exercise of these challenges.

■ In the case under review, the defendant is black, the victim was black, the questioned challenges were used to exclude black persons, and the death penalty was sought.

As *prima facie* evidence of discrimination, the defendant offered the state's exercise of peremptory challenges against the only two black persons to survive challenges for cause.[1]

The defendant raised his *Batson* objection before the completion of jury selection, and the trial court conducted a hearing outside of the presence of the venire. The prosecutor stated to the court that he peremptorily challenged Mrs. Ivy and Mr. Jennings because they each expressed opposition to the death penalty. Additionally, the prosecutor explained his reasons for striking two other jurors who were white. The trial judge ruled that the reasons stated for having struck the two black jurors were

---

1. Six black persons were on the venire when first presented. Four were dismissed for cause.

**790**

"exclusive of race" and found no *Batson* violation.

We conclude that the record supports the trial judge's ruling and agree that the prosecution properly discharged its obligation under *Batson* to demonstrate that peremptory challenges were not exercised to further a discriminatory purpose. *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990); *State v. Jones*, 789 S.W.2d 545 (Tenn.1990).

## IV

In another issue, the defendant contends that the trial judge erroneously admitted his inculpatory statement into evidence. The reason as expressed in his brief is that the "Defendant at the time he made the alleged confession/statement, had been without sleep for more than twenty-four hours. As a result of his lack of sleep, taken with his emotional state, he was not in full control of his faculties and did not, therefore, make a knowing and intelligent relinquishment of his right to remain silent."

The defendant's brief on this issue makes no reference to proof in the record;

the issue is, for that reason, waived. *See* R.Tenn.Ct.Crim.App. 10(b); Tennessee Rules of Appellate Procedure 27(a)(7).

Moreover, there is no transcript of the evidentiary hearing on this motion in the record before us. In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence. *Smith v. State*, 584 S.W.2d 811 (Tenn.Crim.App.1979); *Vermilye v. State*, 584 S.W.2d 226 (Tenn.Crim. App.1979).

Because the defendant has failed to demonstrate the evidentiary insufficiency or reversible error he has asserted, the judgment of the trial court is affirmed.

AFFIRMED.

DWYER and WADE, JJ., concur.