# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 2, 2010

## STATE OF TENNESSEE v. MARIO CHAMBERS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-00840     John T. Fowlkes, Jr., Judge**

_____

**No. W2009-02035-CCA-R3-CD  - Filed August 18, 2010**

_____

In the Shelby County Criminal Court, the Defendant-Appellant, Mario Chambers, entered guilty pleas to four Class E felonies and one Class A misdemeanor.  Specifically, Chambers pled guilty to possession of Morphine with intent to sell, possession of Hydrocodone with intent to sell, possession of Alprazolam with intent to sell and possession of marijuana.  As a part of his plea agreement, Chambers received concurrent two-year sentences for each of the felony convictions to be served in the county workhouse and a concurrent thirty-four day sentence to be served in the county jail for the misdemeanor conviction, with the manner of service to be determined by the trial court.  On appeal, Chambers argues that the trial court erred in denying an alternative sentence.  Upon review, we affirm the trial court's judgments.

**Tenn. R. App. P.  3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. JOHN EVERETT WILLIAMS, J., concurring in result only.

Jacob E. Erwin, Memphis, Tennessee, for the Defendant-Appellant, Mario Chambers.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa S. McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

**Guilty Plea Hearing.**  Chambers failed to include a copy of the guilty plea colloquy in the record on appeal.  However, the information from the affidavit of complaint was incorporated into the presentence report:

Officer(s) C. Deveaux (1035) was driving W/B Beale east of Orleans and observed Def: Chambers driving a black Dodge Ram truck toward her squad car E/B in the W/B lane of traffic on Beale near Orleans and stopped his vehicle approximately 6 ft in front of officer's squad car when prompted by officer's siren. He then got out of the vehicle and opened the rear left door and let out a passenger, Def: Reed. Def: Chambers began walking toward officer yelling. Officer then called for additional cars and asked Def: Chambers for his driver's license. He presented TN ID only #077235141. According to Station "B", his DL was suspended on 04/24/95 for frequent traffic violations. He did not have proof of financial responsibility. Officers placed him under arrest and placed him in the patrol car. While inventorying the vehicle incident to arrest, Officers Kellum and Bishop found the following items in the center console/armrest of the vehicle: 2 baggies containing a total of 183 green bars of 2mg Xanax Schedule 4 narcotics; 2 baggies containing a total of 135 blue oval tablets of 10mg Hydrocodone Schedule 4 narcotics; 1 clear plastic baggie containing 6 pink capsules of 80mg Kadian (Morphine) Schedule 2 narcotics; 24 pink oval tablets of 2 mg Xanax Schedule 4 narcotics; 2 white oval tablets of Lortab Schedule 3 narcotics, 11 unidentified green and white capsules; and 1 clear plastic baggie of a green leafy substance that tested positive for 3.68 t.g.w. of marijuana.

This incident occurred in Memphis, Shelby County, Tennessee.

As we will explain, we will address the issues presented on appeal because we conclude that the record is sufficient for our review.

**Sentencing Hearing.** At the August 6, 2009 sentencing hearing, the State's only proof was the presentence investigation report, which was entered into evidence. This report showed that Chambers had several convictions, including three felony drug convictions. Chambers provided testimony in his own behalf.

Chambers testified that he was thirty-five years old and had previously entered guilty pleas to charges stemming from a traffic stop where pills were found in his car. He explained that he had "chronic back pain" and had been prescribed "a large quantity of pills," some of which he would sell to other individuals. Chambers said that his back was injured when he was twenty-two or twenty-three years old during a fight while he was incarcerated. He admitted that his first drug conviction was when he was sixteen. He also received a three-year sentence at age seventeen and a one-year sentence at age twenty-three for drug convictions. He also was convicted of an assault and a few traffic offenses. Chambers said that he was convicted of a false offense report in 2006 associated with a domestic violence charge, for which he received probation after serving forty-five days in jail.

Chambers stated that he was employed as a manager at Diva Shoes approximately six days a week and also worked in landscaping for his uncle. A letter of recommendation from Chambers's boss and a check stub from his employment were entered into evidence. Chambers also informed the court that he had gotten his GED several years ago and had recently obtained a culinary arts certificate online, which were also admitted into evidence.

Chambers said that he served nearly forty days in confinement prior to being released on bond in this case. He said that he believed he deserved a chance to avoid further confinement because he had prescriptions for the pills that were in his possession. However, he admitted that he sold "a few of [the pills]." When asked by his attorney whether he could follow the terms of probation in the event probation was granted, Chambers responded, "I don't have [a] choice. I'm too old to do anything else." Chambers said that he was no longer selling pills and he intended to stay out of trouble and start a restaurant business with his brother. He then asked the court for a second chance:

> I ask the Court to forgive me for what I did . . . . I was wrong doing it you know that, but I ain't been doing nothing [sic] but honest work myself, you know. So . . . I'm on the straight and narrow. I understand what happened.

> I know sometimes . . . things get in your way, and . . . you really just have misjudgment [sic] . . . , but I was like I'm too old for that. I really am. So I [asked myself] do I want to do this, or do I want to stay out here [and] . . . I think I want to stay out here. So that's why I work . . . six days a week.

> When I save a little money, . . . [I am] trying to get . . . a business . . . I . . . did enough wrong in my life, and I understand – well, there was another way, but . . . , I [already] did it now so, . . . I can't take it back, but I really ask . . . the Court . . . to have mercy on me . . . . I understand what I've been through and what can I do for myself now . . . .

On cross-examination, Chambers admitted that he did not have a prescription for the marijuana that was found in his car when he was arrested but claimed that the marijuana belonged to another individual in his car. Chambers reiterated that he had a prescription for the other drugs. He asserted that all of the pills were in one bag, rather than separate bags. He also claimed that he had so many pills at the time of his arrest because they were left over from his previous month's prescription. He acknowledged that his 1991 conviction was for selling cocaine, but he claimed that he stopped selling cocaine in 1993 or 1994. Chambers stated that the only prescription that his doctor gives him now is Lortab, which he currently takes five times a day for his back pain.

The trial court then conducted its own examination of Chambers. During the court's questioning, Chambers acknowledged that despite his prior testimony he did not have a prescription for some of the drugs in his possession when he was arrested. He admitted that he did not know what some of the pills were or where he had obtained them. Chambers's prescriptions, which included information regarding the specific drugs and the quantities of the drugs he was prescribed, were admitted into evidence. The court determined that it was unnecessary for Ms. Matthews, Chambers's boss at Diva Shoes, to testify in light of her letter of recommendation that had already been admitted into evidence.

Defense counsel acknowledged Chambers's lengthy record but argued that his client's work record, his age, and the time he had already spent in confinement prior to posting bond weighed in favor of full probation. He felt that probation could ensure that his client maintained his job, stayed out of trouble, and refrained from taking drugs that he was not prescribed. Defense counsel also expressed concern about his client's welfare if he lost his job because of his confinement. The State countered by emphasizing that Chambers's three prior drug convictions and his testimony that indicated that he did not believe his offenses were serious. The State argued that the trial court's grant of probation in this case "would depreciate the seriousness of the offense."

At the end of the sentencing hearing, the trial court denied alternative sentencing:

[The] State's correct. Mr. Chambers has been in trouble for the last fifteen years [and his record] goes back to juvenile court selling dope. A couple of other times he was on probation for dope in the '90s. [He received a] [t]hree-year sentence [in] '91, [and a] one-year sentence looks like [in] '98 [for] selling drugs. Then [he has] less significant [convictions for] criminal trespass, domestic violence, theft of services. These are all misdemeanors, criminal trespass, driving, assault.

Mr. Chambers really – then he gets the false reporting [conviction] that he got a year [ago], but you see that's in connection with the domestic violence that he got sixty days [in confinement]. I can see what happened. Judge sent him out to do the sixty days, paid a fine and all, and then probation for a year after he got out. I don't even know how long he spent out there. He met with [a] probation officer a couple of times, and then he's done with probation. Since then he's gotten another arrest for driving a couple of times.

I was going to grant [alternative sentencing], . . . and have him serve some of the time, but he's been on probation too many times, and the record shows he's been on probation [on] three prior occasions. I'm going to deny the petition [because of] the number of times that he's been on probation.

He's just been disregarding the law . . . for fifteen years. I – I understand what you're saying, but it was just about a year, year and a half ago that he was in trouble for that false reporting [conviction and] ended up . . . here in the criminal courts on that.

Based upon the record that's before me, the negatives outweigh the positives, [the] quantity of drugs that he had, the way they were packaged. There was an admission to selling the drugs. I find that Mr. Chambers hasn't carried the necessary burden, and I'm going to have to deny the petition.

At the conclusion of the sentencing hearing, the court sentenced Chambers to an effective sentence of two years in the county workhouse. On September 18, 2009, he filed a motion to reconsider alternative sentencing, which the trial court denied the same day. Chambers then filed a timely notice of appeal.

## ANALYSIS

**I. Failure to Include Copy of Guilty Plea Transcript.** As previously stated, Chambers failed to include the transcript of the guilty plea colloquy on appeal. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811 (Tenn. Crim. App. 1979), perm. to appeal denied (Tenn. July 30, 1979); Vermilye v. State, 584 S.W.2d 226 (Tenn. Crim. App. 1979), perm. to appeal denied (Tenn. July 2, 1979)), perm. to appeal denied (Tenn. Mar. 18, 1991); see also State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (holding that the defendant's failure to include the transcript of the guilty plea hearing and a copy of the indictment required a presumption that "had all of the evidence considered by the trial court been included in the record on appeal, it would have supported the imposition of a six[-]year sentence"), perm. to appeal denied (Tenn. June 21, 1999). The trial court's denial of an alternative sentence can be presumed correct on this ground alone. Keen, 996 S.W.2d at 844. However, because we conclude that the record is sufficient for our review, we will address the issue presented on appeal.

**II. Sentencing.** Chambers argues that the trial court erred in denying alternative sentencing. He contends that the trial court failed to consider the sentencing principles of the sentencing act. He also argues that he was entitled to the statutory presumption that he was a favorable candidate for alternative sentencing because he pleaded guilty to three Class E felonies. Moreover, he asserts that the State failed to satisfy its burden of proving that he was not a suitable candidate for alternative sentencing because it did not present any

witnesses at the sentencing hearing. He claims that his criminal history consisted of nonviolent offenses, that he was not a danger to society, and that he had already served thirty-seven days in jail prior to posting bond, which was a sufficient amount of confinement to avoid depreciating the seriousness of the offense and to deter others. Furthermore, Chambers contends that he had successfully completed probationary sentences on unrelated, prior convictions, had not had any serious criminal convictions for several years, and was unlikely to reoffend.

In response, the State first contends Chambers failed to present a proper record for review because he failed to include the guilty plea transcript. It also argues that the 2005 amendments to the sentencing act eliminated the presumption that a defendant was a favorable candidate for alternative sentencing, thereby making Chambers arguments about the statutory presumption for alternative sentencing moot. Finally, the State asserts that the trial court did not err in denying an alternative sentence. We agree with the State.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. Id. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Because the trial court in this case considered the sentencing principles and all facts and circumstances, our review is de novo with a presumption of correctness. See Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about
  sentencing.

T.C.A. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002);
State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007), perm. to appeal denied (Tenn.
Jan. 28, 2008).

Any sentence that does not involve complete confinement is an alternative sentence.
See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Under the revised Tennessee
Code Annotated section 40-35-102(6)(A) (2006), a defendant who does not require
confinement under subsection (5) and "who is an especially mitigated or standard offender
convicted of a Class C, D, or E felony, should be considered as a favorable candidate for
alternative sentencing options in the absence of evidence to the contrary[.]" A trial court
should consider the following when determining whether there is "evidence to the contrary"
that would prevent an individual from receiving alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who
> has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the
> offense or confinement is particularly suited to provide an effective deterrence
> to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently
> been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2006); see also Ashby, 823 S.W.2d at 169.

We note that the trial court's determination of whether the defendant is entitled to an
alternative sentence and whether the defendant is a suitable candidate for full probation are
different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477
(Tenn. Crim. App. 1996), perm. to appeal denied (Tenn. Oct. 14, 1996). Where a defendant
is considered a favorable candidate for alternative sentencing, the State has the burden of
presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn.
Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn.
2000), perm. to appeal denied (Tenn. Oct. 2, 1995). However, the defendant has the burden
of establishing suitability for full probation, even if the defendant is considered a favorable
candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the
defendant is ten years or less and the offense for which the defendant is sentenced is not

specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Id. § 40-35-303(b) (2006). However, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citation omitted), perm. to appeal denied (Tenn. Mar. 17, 2003).

Here, Chambers entered guilty pleas to possession of Morphine with intent to sell, possession of Hydrocodone with intent to sell, possession of Alprazolam with intent to sell, Class E felonies, and misdemeanor possession of marijuana. Accordingly, he was considered a favorable candidate for alternative sentencing. See T.C.A. § 40-35-102(6)(A) (2006). However, the presentence report shows that Chambers had three prior felony drug convictions, as well as numerous misdemeanor convictions for attempt to commit a false report, domestic violence, criminal trespass, theft of services worth $500 or less, driving without a valid license, failure to appear, assault, and evading arrest. Ultimately, the trial court determined that Chambers was not a favorable candidate for alternative sentencing. The court found that Chambers "had been disregarding the law . . . for fifteen years[,]" which demonstrated a significant criminal history. See T.C.A. § 40-35-103(1)(A) (2006). The court also found that Chambers had "been on probation too many times" including as recently as the prior year, which established that probation had frequently and recently had been applied to him unsuccessfully. See id. § 40-35-103(1)(C) (2006). The court also emphasized the volume of pills involved and Chambers's admission to selling pills that had been prescribed for him. The record supports the trial court's imposition of a sentence of confinement. Accordingly, Chambers's effective two-year sentence in the county workhouse is proper.

## CONCLUSION

Upon review of the record, we affirm the trial court's judgments.

_____
CAMILLE R. McMULLEN, JUDGE