IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2018

**STATE OF TENNESSEE v. ARVESTER BROWN**

**Appeal from the Criminal Court for Shelby County**
**No. 15-04907      John Wheeler Campbell, Judge**

_____

**No. W2017-02547-CCA-R3-CD**

_____

The Defendant, Arvester Brown, appeals his convictions for felony murder and especially aggravated robbery, for which he received an effective sentence of life imprisonment. On appeal, the Defendant contends that (1) the trial court erred in failing to declare a mistrial due to the behavior of one of the State's witnesses; (2) the trial court erred in excluding evidence that the victim had agreed to carry out a "hit" on the Defendant; and (3) the State made improper statements during closing arguments. Upon reviewing the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Jonathan Mosley and Handel Durham (at trial), Memphis, Tennessee, and Monica A. Timmerman (on appeal), Bartlett, Tennessee, for the appellant, Arvester Brown.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

The evidence presented at trial established that during the early morning hours of August 24, 2103, the Defendant shot the victim, Mr. Breman Hunter, in the head while

the victim was sitting in his car in the parking lot of an apartment complex in Memphis, Tennessee. The Defendant took money and drugs from the victim and fled the scene.

Mr. Samuel Jones testified that the Defendant came to his apartment at approximately 1:00 a.m. and wanted to purchase cocaine. Mr. Jones called the victim, who was in the area and, as instructed by the Defendant, told the victim to bring $20.00 worth of cocaine. The victim arrived approximately twenty minutes later. When the victim arrived, he was holding a .38 caliber black revolver and a large bag that contained numerous smaller bags of cocaine. The Defendant gave the victim $15.00 in exchange for cocaine. The victim reached into his pocket, produced a large "bankroll" of money broken down into $20.00 bills, and added the Defendant's money to the "bankroll."

The victim, the Defendant, and Mr. Jones remained in Mr. Jones's apartment for a period of time while talking, listening to music, and using some of the victim's cocaine. The Defendant kept walking back and forth to the bathroom. The victim said he needed to leave. As he was leaving, the Defendant told the victim, "Hold on, big bro. I need to put a bug in your ear." The Defendant told Mr. Jones that he would return, and Mr. Jones left the front door open for the Defendant.

After a few minutes, Mr. Jones went outside to see what was happening and to smoke a cigarette. He stood on the balcony of his second-floor apartment and leaned over the railing. He saw the Defendant leaning inside the passenger side of the victim's car and talking to the victim, who was sitting in the driver's seat. The Defendant was holding open the passenger side door; the car was running; and the interior lights were on. The Defendant and the victim were the only two people in the parking lot.

The Defendant turned around and told Mr. Jones that he would return to the apartment soon. As Mr. Jones was walking away, he heard a gunshot. He turned around and saw the victim leaning on the back of the driver's seat with blood coming out of his head. The Defendant was standing by the victim's car. Mr. Jones ran back inside his apartment and onto the back patio, and he heard someone twisting the knob of his front door. He called 9-1-1 and saw the Defendant run by and toward another apartment complex. Mr. Jones stated that the Defendant had not parked his car near Mr. Jones's apartment but had parked his car in a parking lot at a nearby apartment complex. Mr. Jones spoke to police officers at the scene and later identified the Defendant in a photographic lineup as the shooter.

Memphis Police Officer Tim Young was the first officer to arrive at the scene. As he was driving through the parking lot, he saw a small silver car with its lights and radio on. Officer Young paused in case the car backed out of the parking space, but the car never moved. Officer Young exited his car and approached the silver car on the driver's

side. The interior lights were on, and the doors were closed. Officer Young saw the deceased victim slumped back in his seat with a gunshot wound to his right front temple. The victim's right pants pocket was turned inside out. It was cloudy and hazy inside the car, which indicated that a firearm had recently been discharged inside the car.

Officers located a .38 caliber Smith and Wesson revolver between the victim's legs and on the driver's side floorboard. A spent .40 caliber shell casing was on the floorboard on the passenger side. Officer Young explained that unlike a revolver, which does not eject casings, a semi-automatic firearm ejects casings to the right and at an angle when fired. He stated that the firearm would have had to have been fired inside the car for the shell casing to land on the floorboard. Officers located a baggie containing 1.56 grams of cocaine in the bottom pocket of the driver's side door. No other drugs or money were found on the victim or in the victim's car. The Defendant later turned himself in to the police.

Dr. Marco Ross, a forensic pathologist, performed the autopsy on the victim. He stated that the victim sustained a gunshot wound to the right outside portion of his forehead. The bullet penetrated the victim's brain, and Dr. Ross recovered bullet fragments on both sides of the back of the victim's brain. Dr. Ross observed gunpowder stippling around the entrance wound, which he said indicated that the victim was shot from a short distance. Mr. Ross concluded that the victim's cause of death was a gunshot wound to the head and that the victim's manner of death was homicide.

The Defendant testified in his defense, admitting that he shot the victim but maintaining that he did so in self-defense. He said that he knew how to defend himself through his firearms training at a Rangemaster class, that he had a gun permit, and that he was able to obtain the permit because he did not have any criminal convictions. He said that when he arrived at Mr. Jones's apartment, Mr. Jones asked to borrow $20.00 to purchase cocaine, and the Defendant gave him $15.00. Mr. Jones called the victim, who came to the apartment and sold Mr. Jones cocaine. The Defendant acknowledged that he was planning to use cocaine and that he and Mr. Jones would use drugs together on occasion.

The Defendant testified that he, the victim, and Mr. Jones remained in the apartment for some time and that nothing unusual occurred while at the apartment. While the Defendant and the victim were leaving, the victim told the Defendant that he wanted to speak to him outside. The Defendant went to the victim's car to see what he wanted. The Defendant stated that the victim pulled a black revolver on him and threatened to "blow [his] a** off." The Defendant said he then shot the victim, explaining, "I defended myself. I was in fear of my life."

The Defendant testified that as he was leaving, he stopped on the street and vomited. He said he "freaked out" and threw his gun away on the expressway. He maintained that he was afraid because he believed that police officers would kill him before listening to him. He later met with police officers and made a statement that he maintained was consistent with his testimony at trial.

On cross-examination, the Defendant testified that he did not know that the victim had a gun in his possession. He said he sat in the passenger's seat of the victim's car, while the victim sat in the driver's seat. The Defendant stated that the victim showed him a bag of drugs and that the Defendant joked that the bag contained the "good stuff" and that the victim sold Mr. Jones "some b******t." The Defendant maintained that the victim produced a black revolver from between his legs and threatened to shoot him. The Defendant stated that while jumping away from the victim, he produced his gun and shot the victim while in the doorway of the car. The Defendant acknowledged that he did not call 9-1-1 and that he was still in the parking lot when the police officers arrived.

The jury convicted the Defendant of one count of felony murder in the perpetration of or attempt to perpetrate robbery and one count of especially aggravated robbery. The trial court imposed concurrent sentences of life imprisonment and twenty years, respectively. The Defendant filed a motion for new trial, which the trial court denied. He then filed a timely notice of appeal.

## ANALYSIS

### I. Failure to Declare a Mistrial

Toward the conclusion of Mr. Jones's testimony on direct examination by the State, Mr. Jones became frustrated when asked to use a pointer to identify the location of the events on maps and in photographs. He began using profanity and calling the Defendant names such as "punk killer" and "[f]ake killing a** n***a." Mr. Jones's behavior continued when questioned by defense counsel on cross-examination. Mr. Jones and defense counsel argued, and Mr. Jones used profanity toward defense counsel and the Defendant. On multiple occasions, the trial court instructed Mr. Jones to answer defense counsel's questions and instructed Mr. Jones and defense counsel to stop arguing with each other. At one point, defense counsel requested a jury-out hearing, complaining that Mr. Jones was "controlling the courtroom." The trial court ordered a short recess and instructed the prosecutor to speak to Mr. Jones about his conduct. When the trial resumed, the trial court allowed co-counsel to take over the cross-examination of Mr. Jones.

- 4 -

The Defendant contends that the trial court erred in failing to declare a mistrial due to Mr. Jones's behavior. The Defendant argues in the alternative that the trial court should have stricken Mr. Jones's testimony and instructed the jury to disregard his outbursts. The State responds that the Defendant waived the issue by failing to move for a mistrial at trial. We agree with the State that the Defendant waived this issue by failing to request a mistrial at trial. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Stanhope*, 476 S.W.3d 382, 397-98 (Tenn. Crim. App. 2013) ("Failure to request a mistrial waives any further action by the trial court."). The Defendant also failed to request that Mr. Jones's testimony be stricken or that the jury be instructed to disregard Mr. Jones's outbursts. Furthermore, the Defendant does not request this court to address the issue under the doctrine of plain error. *See State v. Patterson*, 538 S.W.3d 431, 436 (Tenn. 2017) (providing that "[a] defendant bears the burden of persuading an appellate court that plain error entitles him to relief"). Accordingly, the Defendant is not entitled to relief on this issue.

## II. Exclusion of Evidence

The Defendant next contends that the trial court erred in excluding the testimony of Mr. Carlos Prather. According to the Defendant, Mr. Prather would have testified that the victim agreed to carry out a "hit" on the Defendant. Mr. Prather testified during a pretrial hearing, and the trial court took the matter under advisement. Following the Defendant's testimony at trial, the trial court found that Mr. Prather's testimony was hearsay and was not relevant in light of the Defendant's testimony. However, the transcript of the pretrial hearing during which Mr. Prather testified is not included in the appellate record. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). When the appellate record "does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which a party relies, this Court is precluded from considering the issue." *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1998) (citing *State v. Groseclose*, 615 S.W.2d 142, 147 (Tenn. 1981); *State v. Jones*, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981)). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citations omitted). Accordingly, the Defendant is not entitled to relief on this issue.

### III. Improper Statements During Closing Arguments

The Defendant maintains that the prosecutor made improper comments during his rebuttal closing argument. "Closing arguments serve to sharpen and to clarify the issues that must be resolved in a criminal case" and enable "the opposing lawyers to present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *State v. Hawkins*, 519 S.W.3d 1, 47 (Tenn. 2017) (citations and quotations omitted). Because counsel in criminal cases are "'expected to be zealous advocates,'" they are afforded "'great latitude in both the style and the substance of their arguments.'" *Id*. (quoting *State v. Banks*, 271 S.W.3d 90, 130-31 (Tenn. 2008)). Prosecutors, however, "must not lose sight of their duty to seek justice impartially and their obligation 'to see to it that the defendant receives a fair trial.'" *Id*. at 47-48 (quoting *Banks*, 271 S.W.3d at 131). Accordingly, a "prosecutor's closing argument must be temperate, must be based on the evidence introduced at trial, and must be pertinent to the issues in the case." *Banks*, 271 S.W.3d at 131 (citations omitted). "[P]rosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence, or make derogatory remarks or appeal to the jurors' prejudices." *Id*. (citations omitted).

The Defendant first contends that the prosecutor improperly argued that according to the Defendant, the victim reached down to get his gun. The Defendant maintains that he never testified how the victim acquired the gun in his hand but stated that he did not see the gun until the victim was raising it to shoot him. The Defendant objected, and the trial court overruled the objection. However, the Defendant waived this issue by failing to raise it in his motion for new trial. *See* Tenn. R. App. P. 3(e) (stating that "no issue presented for review shall be predicated upon … misconduct of jurors, parties or counsel … unless the same was specifically stated in a motion for new trial"); *State v. Johnathan Robert Leonard*, No. M2016-00269-CCA-R3-CD, 2017 WL 1455093, at *6 (Tenn. Crim. App. Apr. 24, 2017), *perm. app. denied* (Tenn. Aug. 16, 2017) (concluding that the defendant did not properly preserve fifteen claims of improper statements in closing arguments by failing to raise them in his motion for new trial). Moreover, the Defendant does not argue plain error. Accordingly, the Defendant is not entitled to relief regarding this issue.

The Defendant also contends that the prosecutor's reenactment of the shooting was improper. The Defendant specifically argues that the reenactment "was based solely on lay witness opinion, not substantiated by expert opinion, and recited facts that were not testified to nor put into evidence." The State responds that the Defendant waived this issue by failing to object at trial and that, regardless, the Defendant is not entitled to relief.

Our supreme court previously stated that the "[f]ailure to object to a prosecutor's statements during closing arguments results in waiver on appeal." *State v. Henretta*, 325 S.W.3d 112, 125 (Tenn. 2010) (citations omitted). However, in *State v. Hawkins*, the Tennessee Supreme Court applied plenary review, rather than plain error review, to two allegations of improper prosecutorial closing argument when the defendant failed to object at trial but raised the issues in his motion for new trial. 519 S.W.3d at 48. The court applied plain error review to two other allegations of improper prosecutorial argument when the defendant failed to both object at trial and raise the issues in his motion for new trial. *Id*. at 49. In the present case, because the Defendant failed to object and state the prosecutor's actions on the record, the transcript is unclear what the reenactment entailed. Thus, regardless of the review that we employ, we conclude that the Defendant is not entitled to relief.

## CONCLUSION

Upon reviewing the records, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 7 -