IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 24, 2025

## SHAMIKA FIFER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 19-00838 Jennifer Fitzgerald, Judge
_____

### No. W2024-01377-CCA-R3-PC
_____

Petitioner, Shamika Fifer, was indicted on charges of first degree murder (Count 1), attempted first degree murder (Count 2), and employing a firearm during the commission of a felony (Count 3). At trial, a Shelby County jury convicted her of Count 2 but could not reach a verdict as to Counts 1 and 3. During a subsequent hearing, Petitioner pleaded guilty to the lesser-included offense of second degree murder in Count 1 and Count 3 was dismissed by the State. The trial court imposed an effective sentence of twenty-one years' confinement. Petitioner then filed a petition for post-conviction relief, which the post-conviction court denied following a hearing. On appeal, Petitioner maintains that her guilty plea was not knowingly and voluntarily entered and that trial counsel was ineffective. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. Appeal 3 as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Rosalind Brown, Memphis, Tennessee, for the appellant, Shamika Elizabeth Fifer.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

*A. Trial*

On August 6, 2018, Petitioner and co-defendant, Dave Wooten, confronted Brianna Myles in retaliation for a physical altercation that had occurred between Petitioner and Ms. Myles the previous day. During the confrontation, Mr. Wooten discharged his firearm, striking Ms. Myles and fatally wounding a bystander, Brandon Lipsey. The Shelby County Grand Jury indicted Petitioner for first degree murder (Count 1), attempted first degree murder (Count 2), and employing a firearm during the commission of a felony (Count 3). Petitioner proceeded to trial in November 2021.[1]

The jury convicted Petitioner of attempted first degree murder but could not reach a verdict on the charges of first degree murder and employing a firearm during the commission of a felony.

Subsequently, on January 25, 2022, Petitioner's case was set for sentencing and a motion for new trial for the attempted first degree murder conviction in Count 2. However, rather than proceeding with the motion for new trial, Petitioner opted to plead guilty pursuant to a plea agreement to the lesser-included offense of second degree murder in Count 1 of the indictment. The record reflects that as part of Petitioner's plea agreement, the trial court imposed a sentence of twenty-one years at 100 percent service for Count 1 and twenty-one years at eighty-five percent service for Count 2, to be served concurrently with Count 1.[2] Count 3 was dismissed.

Thereafter, Petitioner filed a timely pro se petition for post-conviction relief, asserting that her guilty plea was not knowingly or voluntarily entered and that she received ineffective assistance of counsel. The post-conviction court appointed post-conviction counsel, who filed an amended petition. On April 5, 2024, the post-conviction court conducted a hearing on Petitioner's claims.

---

[1] Petitioner has not provided a complete record on appeal, instead including only transcripts from the latter portion of the trial, the post-conviction hearing, and a bond hearing. Although the State noted this deficiency in its appellate brief, Petitioner neither filed a reply brief nor sought to supplement the record. As a result, our review of the facts is necessarily limited.

[2] In the absence of the judgment forms, it is unclear from the limited record whether Petitioner waived her right to appeal her jury conviction.

*B. Post-Conviction Hearing*

Petitioner testified on her own behalf at the post-conviction hearing. Petitioner stated that she had a good relationship with trial counsel ("Counsel") until she declined the State's original plea offer of thirteen and a half years at twenty percent release eligibility for the charge of facilitation of first-degree murder. After rejecting the offer, Petitioner recalled that Counsel had a prosecutor explain to her that if "I don't take the plea, [the prosecutor] [was] going to make sure that I get convicted of something." She explained that this made her feel "coerced" into initially signing the plea agreement. As a result, when she appeared before the trial court for the plea hearing, she informed the court that she was not "comfortable" accepting the plea. Petitioner further requested that the court appoint new trial counsel. She stated that Counsel had been "very rude," had used profanity towards her, and had conveyed inconsistent information to her and her family. However, she recalled that the court indicated its belief that Counsel had done a good job and denied the request for new trial counsel.

Regarding the second plea hearing—at which the Petitioner accepted the State's offer of twenty-one years at 100 percent—Petitioner ultimately testified that the trial court "wasn't informed the second time that I was being coerced." She said that she was initially unaware the hearing was for the purpose of entering a guilty plea, stating, "I thought I was there to be sentenced on the charge that I was found guilty of at trial." According to Petitioner, Counsel approached her at the hearing with paperwork and said, "Either you take this, or you're going to get life. If you tell them that you want to go to trial again, I'm going to make sure that you get life." Petitioner claimed that she informed the court of Counsel's statement but proceeded with the plea anyway because she "was afraid."

Petitioner agreed that Counsel definitively argued that she was not the shooter at trial. She testified that her co-defendant, Mr. Wooten, was willing to testify on her behalf that Petitioner never planned to shoot anyone.

Petitioner claimed that, following her guilty plea, she did not pursue a direct appeal because Counsel failed to inform her of her right to appeal and did not file a notice of appeal on her behalf.

Petitioner also recalled an instance in which she requested a business card from another attorney, and Counsel responded, "[y]ou're going to need all the f[***]ing cards you can get to get out of this." She said that Counsel used profanity toward her "at least two or three times" during the course of his representation.

Petitioner further testified that during trial, Counsel questioned Ms. Myles in an irrelevant and improper manner. Specifically, Counsel questioned Ms. Myles about

working as a prostitute. Petitioner averred that this "had nothing to do with why me and [Ms. Myles] got into a fight."

On cross-examination, Petitioner acknowledged that the trial court informed her of her right to appeal during both plea hearings. She also conceded that Counsel would have been remiss in his duties had he failed to inform her of the risks associated with proceeding to a second trial. Petitioner indicated that she ultimately chose to plead guilty because she was afraid of receiving a life sentence.

On redirect examination, Petitioner recalled a Facebook post a detective read into the record at trial. However, she denied having written the post. Petitioner further testified that Counsel did not object to the introduction of the post at trial and did not seek to authenticate the legitimacy of the Facebook account.

Petitioner testified that on the day of her trial, Counsel had brought her clothes to wear but they did not fit. She stated that she asked Counsel where the clothes were that her family had arranged for her to wear at trial. Petitioner's father, Joe Rosser, testified that Counsel never directed him or his family to bring clothes for Petitioner to wear at trial.

The State called Counsel as its sole witness. Counsel testified that he had been a licensed attorney in Tennessee for almost twenty-seven years at the time of the hearing and had been practicing criminal law during that entire time. Counsel stated that he had primarily practiced in Shelby County and had tried well over 100 trials, approximately nine of which were death penalty cases.

Counsel testified that he began representing Petitioner in May 2019 and met with her between seven and twelve times at the jail. He confirmed that he had retained an investigator to assist with the case but explained that there was "nothing to investigate" because "the offense was entirely on video." Counsel stated that the investigator attempted to locate Ms. Myles; however, neither the investigator nor the State was able to locate her for several months. He further noted that, aside from Ms. Myles, there were no other witnesses and that the facts of the case were largely undisputed. To that point, the primary defense was the legal argument that Petitioner was not criminally responsible for the actions of her co-defendant.

Counsel testified that he discussed Petitioner's options with her regarding how to proceed with the case. He confirmed that Petitioner had the choice of either accepting the State's initial offer of thirteen and a half years at twenty percent release eligibility or proceeding to trial. Counsel recalled that, once it became clear the State's offer would not improve, he advised Petitioner that a more favorable plea offer would not be forthcoming. He further explained that, under the theory of criminal responsibility, Petitioner was likely

to be convicted of first degree murder, stating, "she would absolutely get convicted" because Petitioner and Ms. Myles had fought the day before, and Ms. Myles had "[got] the better of her."

Counsel indicated that his opinion regarding the prudence of the plea deal was based on the strength of the evidence. He testified that, after Petitioner initially fought Ms. Myles, she recruited Mr. Wooten the following day to seek retaliation. According to Counsel, video footage showed Petitioner retrieving a crowbar from the trunk of a vehicle while Mr. Wooten placed a firearm in his waistband. Upon seeing Ms. Myles, Petitioner chased her with the crowbar. When bystander Brandon Lipsey asked what was happening, Mr. Wooten shot him "point-blank" and then shot Ms. Myles. Following the shooting, Petitioner told Mr. Wooten they should leave, and the two left the scene together.

Counsel recalled that at the initial plea hearing, Petitioner agreed to the plea and had signed the paperwork necessary for the plea but changed her mind during the colloquy. Following this, the State revoked all offers, and the case was set for trial. Counsel stated that prior to trial, he spoke with Mr. Wooten, whom he anticipated would testify on behalf of Petitioner. However, Mr. Wooten indicated that Petitioner was responsible for his current incarceration and that his testimony would not be favorable to Petitioner. Counsel stated that upon learning this, he made the strategic decision not to call Mr. Wooten as a witness. Regarding the Facebook post, Counsel testified that it was "the least of our problems" and that he did not believe he had reasonable grounds to object to the admission of the post.

Counsel stated that, as a result of the trial, Petitioner was convicted of attempted first degree murder, while the jury was unable to reach a verdict on the charge of first degree murder. He recalled that one juror acted as a holdout and effectively refused to participate in the deliberations. Counsel testified that, following the trial, he secured a plea offer from the State under which Petitioner would receive a sentence of twenty-one years for second degree murder, to be served concurrently with the existing twenty-one-year sentence for attempted first degree murder. The charge in Count 3—employing a firearm during the commission of a felony—would be dismissed pursuant to the agreement.

With regard to the prosecutor's presentation of the convicting evidence to Petitioner, Counsel explained that this was a "reverse proffer." He explained that "[a] reverse proffer is where the defendant doesn't say anything, and the prosecutor lays out the case against the defendant and explains to the defendant how they would get convicted of what charges." He stated that he "was trying to convince [Petitioner] however I could from whatever source I could to please accept [thirteen and a half] years at twenty percent . . . ." Counsel confirmed that the reverse proffer took place prior to the first plea hearing.

Counsel also described his conversation with Petitioner during the second hearing where she ultimately pleaded guilty:

I explained to [Petitioner] her options, which were, have the sentencing hearing as to the attempted first-degree murder, and you're facing [fifteen] to [twenty-five] years. The Court will probably give you somewhere between [eighteen] to [twenty-one]. You're stuck with that. Then, with a sentence of [eighteen] to [twenty-one] years, the only question is what's going to happen with the first-degree murder? You can absolutely go to trial. The count was [eleven] to [one] to convict. The only reason you're not serving a life sentence now is because one of the jurors chose not to participate in the process. So, I don't see what you're gaining. Please cut your losses. I'm glad she did.

### C. Post-Conviction Court's Findings

The post-conviction court made its findings in a written order entered August 15, 2024. The court first addressed Petitioner's collective claims pertaining to whether her plea was knowingly and voluntarily entered. The court found that Petitioner entered the plea to avoid a life sentence for first degree murder, not because she was pressured or coerced. The court noted that the guilty plea hearing held on January 24, 2022, demonstrated that each of Petitioner's rights was explained to her and that Petitioner affirmed that she understood those rights and chose to plead guilty. The court included in its analysis a portion of the plea colloquy in which Petitioner specifically affirmed that she was not being forced to enter a plea and that she was doing so freely and voluntarily. The court concluded that "nothing in the record suggests that the Petitioner did not understand her rights as they were explained to her."

The court further found that Petitioner was fully informed when she entered her plea following her conviction at trial. While Petitioner may not have known about the plea agreement prior to the day she entered into it, the court determined that "[Counsel] acted reasonably under the circumstances in informing . . . Petitioner about her rights and options." In particular, the court noted that Counsel advised Petitioner she would face a sentence of fifteen to twenty-five years regardless of the outcome on the remaining counts. Accordingly, Petitioner faced the choice of risking a harsher sentence by proceeding to another trial or "cutting her losses" by accepting the plea agreement. The court observed that although Counsel did not meet with Petitioner between the trial and the plea date, Counsel nonetheless informed her of her rights and options prior to the plea. The court, therefore, concluded that Petitioner's receiving the plea offer on the same day it was entered "had no bearing on whether the plea was free and voluntary."

- 6 -

With respect to Petitioner's claim that she was coerced into pleading guilty as a result of the reverse proffer, the court found that argument to be without merit. The court noted that at the plea hearing, Petitioner informed the court that Counsel allowed the prosecutor to present the convicting evidence to her and assert that she would be convicted of some offense. However, when the court asked Petitioner whether "anything about that changed her mind to plead guilty," she responded in the negative. Based on this exchange, the court concluded that Petitioner made the decision to plead guilty voluntarily, after "weigh[ing] her options and deciding that pleading guilty was in her best interest."

The court next addressed Petitioner's claims of ineffective assistance of counsel regarding her guilty plea. It concluded that Petitioner failed to meet her burden of proving that Counsel "scared and threatened" her into pleading guilty. The court determined that no such threats were made. Rather, based on Petitioner's own testimony, the court found that she chose to accept the twenty-one-year plea offer because she feared receiving a life sentence if convicted of first degree murder at trial. The court reiterated that Counsel fully explained Petitioner's rights and options and the risks associated with proceeding to trial.

The court then considered Petitioner's claim that Counsel was ineffective for advising her that she would likely be convicted at a subsequent trial, despite the initial trial resulting in a hung jury. The court noted Counsel's testimony that the hung jury on the first degree murder count was due to one juror's refusal to deliberate. Given that the evidence supported a theory of criminal responsibility, the court found that Counsel acted reasonably in seeking to negotiate a plea agreement in order to avoid the risks associated with a second trial. In any event, the court emphasized that the decision to plead guilty was ultimately made by Petitioner. As such, the court concluded Petitioner failed to demonstrate prejudice resulting from Counsel's advice.

Regarding Petitioner's claim that Counsel was rude and used profanity, the court found the issue was without merit. The court stated that "[a]lthough Petitioner was unsatisfied with how and what [Counsel] told her about her case, it appears [Counsel] told her the truth." The court credited the testimony of Counsel and found that Petitioner "just simply did not want to hear the truth about her case." Moreover, Petitioner provided no evidence that Counsel's cursing affected her decision to plead guilty.

Regarding Petitioner's claim that Counsel inappropriately attacked the character of Ms. Myles, the court concluded that Counsel was not ineffective and that Petitioner suffered no resulting prejudice from Counsel's actions. The court determined that it was reasonable for Counsel to challenge the victim's credibility by presenting evidence that she was engaged in illicit activity for financial gain.

With respect to Petitioner's claim that Counsel was ineffective for failing to object to the Facebook post, the court determined that Counsel's performance was not deficient. The court credited Counsel's testimony that he did not believe there was a valid basis to object to the post. Accordingly, the court concluded that it was reasonable for Counsel to refrain from raising an objection.

Finally, with respect to Petitioner's claim that Counsel failed to inform her that she could wear street clothes at trial, the court determined that Petitioner failed to meet her burden of proof. The court credited Counsel's testimony that he informed both Petitioner and her family of her right to wear street clothes during trial. When her family did not provide other clothing, Counsel brought clothes himself; however, they did not fit. Accordingly, the court concluded that this claim lacked merit.

Having determined that Petitioner failed to meet her burden on any of her claims, the court denied the petition for post-conviction relief. Petitioner's timely appeal follows.

## II. Analysis

On appeal, Petitioner asserts that the post-conviction court erred in denying her petition for post-conviction relief. Specifically, Petitioner argues that: (1) Counsel exhibited inappropriate behavior toward her after she declined the State's initial plea offer; (2) Counsel improperly attacked a witness's character during trial; (3) Counsel failed to inform her of her right to appeal her jury conviction; (4) the trial court denied her request to appoint new trial counsel after she expressed feeling coerced by Counsel; (5) Counsel arranged a meeting between her and a prosecutor, during which the prosecutor explained the State's evidence against her; (6) Counsel failed to object to the introduction of the Facebook post at trial; and (7) Counsel did not inform her that she had the option to wear street clothes at trial. The State argues that Petitioner is not entitled to relief and has waived review of her claims by failing to adequately brief the issues and to provide a complete record on appeal.

Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Our court's rules say the same: "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

Here, Petitioner's brief fails to support the issues raised with argument or citations to the record. In the argument section, Petitioner states: "[Petitioner] alleges that her plea

was not knowing and voluntary. The following discusses the facts, court's decision and argument of [Petitioner] on her contentions[.]" Immediately thereafter, she merely restates the issues presented for review, followed by the sentence fragment: "In support of her contentions[.]" The brief includes no further argument or legal analysis. Accordingly, Petitioner has waived review of all claims by failing to adequately brief the issues. *See* Tenn. Ct. Crim. App. R. 10(b).

Waiver notwithstanding, Petitioner is not entitled to relief due to her failure to provide an adequate record on appeal. She included only transcripts from the latter portion of the trial, the post-conviction hearing, and a bond hearing. Although the State noted this deficiency in its responsive brief, Petitioner neither filed a reply brief nor sought to supplement the record.

As the appellant, Petitioner bears the burden of preparing a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where . . . the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which a party relies, this Court is precluded from considering the issue." *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1998) (citing *State v. Groseclose*, 615 S.W.2d 142, 147 (Tenn. 1981); *State v. Jones*, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981)). Importantly, "[i]n the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing *Smith v. State*, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); *Vermilye v. State*, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)).

Notably, Petitioner failed to include transcripts from the plea hearing in the appellate record.[3] These transcripts are directly relevant to her claim that her guilty plea was not knowingly and voluntarily made. The post-conviction court relied heavily on them in concluding that Petitioner's plea was entered knowingly and voluntarily and found that "each of her rights were explained to her" during the second guilty plea hearing. The court further observed that Petitioner affirmed to the trial court that she was pleading guilty freely and voluntarily. Additionally, the court found that while Petitioner raised concerns about Counsel during the plea hearing, she expressly stated that those concerns did not affect her decision to plead guilty. The plea hearing transcripts are necessary for appellate review and in their absence, we must presume the findings of the post-conviction court are correct. *Bibbs*, 806 S.W.2d at 790. Likewise, Petitioner is not entitled to relief regarding her

---

[3] We recognize our supreme court's holding in *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012), that, when a guilty plea hearing transcript is absent, appellate courts must determine on a case-by-case basis whether the record permits meaningful review under *State v. Bise,* 380 S.W.3d 682 (Tenn.2012).

ineffective assistance of counsel claims. As the State correctly notes, Petitioner's ineffective assistance claims are largely based on Counsel's actions regarding her guilty plea and his trial performance. However, in the absence of the full trial record and the plea hearing transcripts, this court is unable to provide meaningful review of these issues. As such, we again must presume that the post-conviction court's rulings are correct. *Id.* Petitioner is not entitled to relief on these issues.

### III. Conclusion

For the reasons stated above, we affirm the judgment of the post-conviction court.

_____ s/ Matthew J. Wilson

MATTHEW WILSON, JUDGE
